IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

YOLANDA E. QUIHUIS AND ROBERT QUIHUIS, A MARRIED COUPLE,
*Plaintiffs*,

*v.*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A FOREIGN
CORPORATION,
*Defendant*.

No. CV-14-0093-CQ
Filed October 1, 2014

United States District Court for the District of Arizona
No. 4:10-cv-00376-RCC

Certified Question from the
United States Court of Appeals for the Ninth Circuit
*Quihuis v. State Farm Mut. Auto. Ins. Co.*, 748 F.3d 911 (9th Cir. 2014)
**QUESTION ANSWERED**

COUNSEL:

Stanley G. Feldman (argued), Jeffrey A. Imig, Haralson, Miller, Pitt,
Feldman & McAnally, P.L.C., Tucson, for Yolanda E. Quihuis and Robert
Quihuis

David M. Bell (argued), Howard L. Andari, David Bell & Associates, PLLC,
Phoenix, for State Farm Mutual Automobile Insurance Company

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in
which CHIEF JUSTICE BALES, JUSTICE BERCH, JUSTICE BRUTINEL,
and JUSTICE TIMMER joined.

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        The United States Court of Appeals for the Ninth Circuit has certified the following question for our review:

> Whether a default judgment against insured-defendants that was entered pursuant to a *Damron* agreement that stipulated facts determinative of both liability and coverage has (1) collateral estoppel effect and precludes litigation of that issue in a subsequent coverage action against the insurer, as held in *Associated Aviation Underwriters v. Wood*, [209 Ariz. 137,] 98 P.3d 572 ([] App. 2004), or (2) no preclusive or binding effect, as suggested in *United Services Automobile Association v. Morris*, [154 Ariz. 113,] 741 P.2d 246 ([] 1987).

*Quihuis v. State Farm Mut. Auto. Ins. Co.*, 748 F.3d 911, 912 (9th Cir. 2014).

¶2        We hold that the default judgment does not preclude litigation of whether coverage exists under the policy.  Consistent with *Morris*, *Wood*, and the Restatement (Second) of Judgments ("Restatement") § 58 (1982), however, we also hold that an insurer in a coverage action may not, in the guise of a coverage defense, litigate what are essentially and solely liability issues resolved by the default judgment.

## I.

¶3        The Ninth Circuit's certification order states the facts and procedural history:

> Norma Bojorquez ("Norma") and Carol Cox ("Carol") were coworkers in Nogales, Arizona.  Norma sought a car for her daughter, Iliana Bojorquez ("Iliana"), and expressed interest in Carol's 1994 Jeep Cherokee (the "Jeep").  By January 9, 2008, Carol and Norma had executed a written sales agreement for the Jeep which called for eight monthly installments totaling $3,000.  Carol gave Norma the only set of keys to the Jeep, and Norma drove the car home.  Norma gave the keys to Iliana so that Iliana could drive the Jeep at her pleasure.  Carol did not transfer the Jeep's title certificate

to Norma because she thought it necessary to retain the title certificate as collateral until Norma paid off the Jeep. The Coxes never retook possession of the Jeep.

The Coxes maintained insurance coverage on the Jeep through a policy with State Farm (the "Policy"). The Policy provided liability coverage for bodily injury caused by accident[s] resulting from the use of cars owned by the Coxes, including the Jeep. The Policy covered the Coxes and permissive users of their cars if the use was within the scope of their consent. The Policy also imposed a duty to defend on State Farm. The Coxes did not cancel the [P]olicy until January 29, 2008.

On January 22, 2008, Iliana was driving the Jeep when it collided with a car driven by Yolanda Quihuis. In Arizona state court, Yolanda Quihuis and her husband, Robert Quihuis, sued Iliana for negligence and the Coxes for negligent entrustment. The negligent entrustment claim relied on the Coxes' alleged ownership of the Jeep at the time of the accident. State Farm refused to defend the Coxes because the Jeep's ownership had transferred to Norma before the accident.

On October 29, 2009, the Coxes, the Bojorquezes, [and] the Quihuises . . . entered into a *Damron* agreement entitled "Assignment of Rights, Agreement Not to Execute." In pertinent part, they stipulated that the Coxes owned the Jeep at the time of the accident, that Iliana was incompetent to drive a motor vehicle and her negligence caused the accident, and that the Coxes should have known that Iliana was incompetent to drive and therefore should not have entrusted the Jeep to her.[1] The Coxes and Bojorquezes agreed to damages in the amount of $275,000. The Coxes assigned their

---

[1] This is not entirely accurate. In the *Damron* agreement, the Coxes stipulated that Iliana was driving "in the scope of [their] consent" a vehicle they owned. But the agreement provided that the Quihuises "claim," not that the Coxes stipulate, that the Coxes should have known that Iliana was incompetent to drive the vehicle and should not have entrusted it to her.

rights under the Policy to the Quihuises, who agreed not to execute upon a judgment against the Coxes or the Bojorquezes. The parties also agreed to request a default judgment to terminate the case. On December 31, 2009, the state court entered default judgment in the amount of $350,000 — $325,000 for Yolanda's injuries and $25,000 for Robert Quihuis' loss of consortium.

The Quihuises, standing in the Coxes' shoes, then brought a declaratory judgment action ["DJA"] against State Farm in Arizona state court for indemnification and failure to defend. State Farm removed the case to the United States District Court for the District of Arizona.

In November 2011, the district court granted State Farm's motion for summary judgment. Applying Arizona law, the district court held that the default judgment did not preclude State Farm from litigating the question of whether the Coxes owned the Jeep at the time of the accident . . . . Consequently, State Farm could litigate the question of coverage, and the court held that the undisputed facts established that the Bojorquezes owned the Jeep at the time of the accident as a matter of law.

The Quihuises timely appealed, contending there was no conflict of interest between the Coxes and State Farm, and that Arizona case law establishes that an insurer may not litigate an issue determinative of coverage if that issue is also determinative of liability and was stipulated to as part of a *Damron* agreement that resulted in entry of a default judgment. They also contended that ownership of the Jeep was a genuine issue of material fact.[2]

---

[2]    The Ninth Circuit agreed with the district court's ruling that the Coxes did not own the Jeep at the time of the accident. *See Quihuis*, 748 F.3d at 914, 918. We do not address that issue because the only question certified is whether State Farm was allowed to litigate the ownership issue at all.

4

*Quihuis*, 748 F.3d at 912–14 (footnotes omitted); *see* A.R.S. § 12-1863(2) (requiring certification order to state all facts relevant to certified question); Ariz. R. Sup. Ct. 27(a)(3)(B) (same).

## II.

**¶4**        When a liability insurer refuses to defend its insured against a third party's tort claims, as State Farm did here, the insured and the claimant may enter into a *Damron* agreement "under which the insured stipulates to a judgment, assigns his rights against the insurer to the claimant, and receives in return a covenant from the claimant not to execute against the insured." *Parking Concepts, Inc. v. Tenney*, 207 Ariz. 19, 20 ¶ 3 n.1, 83 P.3d 19, 20 n.1 (2004); *see Damron v. Sledge*, 105 Ariz. 151, 152–53, 460 P.2d 997, 998–99 (1969). An insured may enter into a similar agreement if the insurer defends the third-party action but reserves its right to later dispute coverage. *Morris*, 154 Ariz. at 119, 741 P.2d at 252; *see also Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137–38, 735 P.2d 451, 459–60 (1987). We refer to this latter type of agreement as a "*Morris* agreement." *See Parking Concepts,* 207 Ariz. at 20 ¶ 3 n.1, 83 P.3d at 20 n.1.

**¶5**        After obtaining a judgment pursuant to a *Damron* or *Morris* agreement, the claimant then seeks payment of the judgment by the insurer based on the latter's indemnity obligation under the policy. 1 Allan D. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds* § 9.11 (6th ed. 2013) [hereinafter "Windt Treatise"]. The insurer, in turn, generally may contest any duty to indemnify by asserting that its policy did not cover the accident or claim. *See Morris*, 154 Ariz. at 119, 741 P.2d at 252 (adopting "[t]he better result" that "permit[s] the insurer to raise the coverage defense, and also permit[s] an insured to protect himself from the risk of noncoverage or excess judgment" when insurer defends under a reservation of rights). Standing in the insured's shoes as assignee, the claimant may also sue the insurer on various claims, including breach of the insurance contract and bad faith. *See Acosta v. Phx. Indem. Ins. Co.*, 214 Ariz. 380, 383 ¶ 13, 153 P.3d 401, 404 (App. 2007) ("When an insurer allegedly acts in bad faith in its duty to indemnify or protect its insured against liability to third parties, . . . [the bad faith] claim can be brought either by the insured or the insured's assignee.").

**¶6**        This case involves (1) a liability insurer's refusal to defend its insured against a third-party tort claim after the insurer determined its

policy did not cover the accident; (2) a stipulated default judgment against the insured under a *Damron* agreement; and (3) a question of ownership, which is both an element of liability for the underlying negligent entrustment tort claim against the insured and a requirement of coverage under the insurance policy. The certified question turns on what issue-preclusion rules apply under these circumstances.[3] As the Ninth Circuit observed, no Arizona case squarely resolves the question presented here. *See Quihuis*, 748 F.3d at 914.

**¶7**       State Farm argues that when the Quihuises served their complaint on the Coxes, "no insured-insurer relationship existed between State Farm and the Coxes" because the Coxes sold the Jeep before the accident. Accordingly, State Farm asserts, the general issue-preclusion rule set forth in Restatement § 27 governs. *See Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986) (applying § 27). Issue preclusion under that section requires actual litigation of the issue of fact or law in question, and thus default judgments generally have no preclusive effect. *Id.*; *see also* Restatement § 27 cmt. e ("In the case of a judgment entered by . . . default, none of the issues is actually litigated.").

**¶8**       The Quihuises, in contrast, contend that Restatement § 58, which specifically concerns indemnitors that have an independent duty to defend, provides the controlling rule. *See* Restatement § 58; *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983) (adopting Restatement § 58). We agree that § 58 applies and therefore analyze issue preclusion in this case under that section, applying other relevant principles established in case law.[4]

---

[3]       "Issue preclusion" and "collateral estoppel" refer to the same principle. *Gilbert v. Bd. of Med. Exam'rs of Ariz.*, 155 Ariz. 169, 174–75, 745 P.2d 617, 622–23 (App. 1987). We use the modern term "issue preclusion" in this opinion.

[4]       State Farm argues that Restatement § 58 does not apply, and hence it could litigate the ownership issue in the DJA, because the district court concluded in that action that the Coxes did not own the Jeep and thus it was not covered at the time of the accident. We reject that circular argument because it assumes an answer to the certified question — whether the district court properly allowed State Farm to litigate the ownership issue. We also find unpersuasive State Farm's argument, based on State Farm's

**A.**

¶9        Restatement § 58 provides:

(1)        When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

(a)        The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

(b)        The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee.

(2)        A "conflict of interest" for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not.

¶10        In this case, § 58 applies because (1) the Coxes' insurance policy imposed on State Farm both an indemnity and a defense obligation; (2) the Quihuises' complaint involved a claim that "might be within the scope of [State Farm's] indemnity obligation"; (3) the Coxes gave State Farm reasonable notice of the Quihuises' lawsuit, thereby providing State Farm with "an opportunity to assume [the Coxes'] defense"; and (4) "a

_____

post-accident, retroactive cancellation of coverage for the Jeep, that § 58 does not apply because "no indemnity relationship exists."

7

judgment" was entered in favor of the Quihuises and against the Coxes. *See* Restatement § 58(1). Thus, we must identify the issues that § 58 precludes State Farm from litigating in the DJA. Although we "incorporate[d]" Restatement § 58 in *Vagnozzi*, 138 Ariz. at 448, 675 P.2d at 708, we have not yet applied it in a case such as this.

**B.**

**1.**

**¶11**        Section 58(1)(a) precludes State Farm from disputing the "existence and extent" of the Coxes' liability to the Quihuises. Although § 58 does not define what "existence and extent" of liability means, Arizona case law provides insight.

**¶12**        In *Morris*, the insured settled with a third-party claimant and stipulated to a judgment after the insurer defended under a reservation of rights. 154 Ariz. at 115, 741 P.2d at 248. The claimant then sued the insurer for indemnification, and the insurer sought to litigate "all aspects of the liability case" in contesting its indemnity obligation. *Id.* at 120, 741 P.2d at 253. Rejecting that position, we found that the insurer was precluded from litigating "the fact []or amount of liability," if the insured's settlement with the claimant "was reasonable and prudent." *Id.* We concluded, however, that the insurer could later litigate whether there is coverage under the policy, stating that "any stipulation of facts essential to establishing coverage would be worthless." *Id.* We stressed that coverage must be open for later litigation because, otherwise, insureds might be able "to obtain coverage that the insured did not purchase" simply by entering into a *Damron* or *Morris* agreement. *Id.*

**¶13**        The *Wood* case illustrates the boundaries *Morris* set for insurers in contesting coverage. In *Wood*, after a default judgment was entered against the insured pursuant to a *Morris* agreement, the insurer argued that it could "fully litigate all liability and damage issues" — matters "bearing solely on the insureds' fault, causation, or the plaintiff's damages" — in the coverage action. *Wood*, 209 Ariz. at 149 ¶¶ 32, 34, 98 P.3d at 584. Applying *Morris*, the court of appeals precluded the insurer from litigating, "in the guise of a coverage defense," the existence and extent of the insured's liability. *Id.* at 150 ¶ 37, 98 P.3d at 585.

**¶14**       *Wood* represents a straightforward application of Restatement § 58(1)(a); it precludes an insurer from litigating not only the fact of liability, but also those issues that "relat[e] strictly to liability and damages [and not] coverage." *Id.* at 152 ¶ 47, 98 P.3d at 587; *see also Ariz. Prop. & Cas. Ins. Guar. Fund v. Martin*, 210 Ariz. 478, 481 ¶ 15, 113 P.3d 701, 704 (App. 2005) (distinguishing *Wood* because the insurer in that case argued there was no liability and therefore no coverage, whereas the insurer in *Martin* sought to litigate "legitimate coverage issues in a [DJA] based on specific policy exclusions").

**¶15**       Although the facts of this case fall between the situations presented in *Morris* and *Wood*, those cases demonstrate that § 58(1)(a) does not preclude litigation of pure coverage issues in a DJA.  State Farm is not seeking to litigate the existence or extent of the Coxes' liability, *see Morris*, 154 Ariz. at 120, 741 P.2d at 253, nor is it arguing that there is no coverage because the Coxes are not liable to the Quihuises, *see Wood*, 209 Ariz. at 150 ¶ 37, 98 P.3d at 585.  Rather, the ownership issue here not only bears directly on liability, but also controls whether there is coverage under the policy, and neither § 58(1)(a) nor any Arizona case applying that section precludes an insurer from litigating this type of coverage issue.  In sum, we have adopted Restatement § 58 with the limitation recognized in *Morris* — insurers generally are not precluded from litigating coverage issues.

**2.**

**¶16**       In addition to being precluded from challenging the "existence and extent" of the Coxes' liability under Restatement § 58(1)(a), State Farm is precluded under § 58(1)(b) from "relitigating" any issues that were "determined in the action" against the Coxes, unless there is a conflict of interest as defined in § 58(2).  Section 58(1)(b) does not define or explain what "determined in the action" means, but the Restatement does provide two illustrations that assist in interpreting that phrase:

> 1.       A is injured when struck by a car owned by B and driven by C.  A brings an action against B, contending that C operated the car with B's permission.  B is insured by I under a policy covering B's liability for another's use of his car with B's permission.  The policy also imposes on I the duty to defend B in actions in which a claim within the indemnity obligation might be sustained.  I refuses to assume defense of

9

the action.  A recovers judgment by default against B.  I may not dispute the existence and extent of B's liability to A and may under applicable law be estopped to deny its liability for indemnification of B.

2.    Same facts as Illustration 1, except that I assumes defense of B.  After actual litigation of the issue of permission, judgment is for A.  I is precluded as to the existence and extent of B's liability to A and, if the term "permission" has the same meaning under the policy as under the rule making B vicariously liable for C's act, I is precluded as to whether the loss was within the terms of the policy so far as "permission" is concerned.  Whether I would be estopped to litigate whether B's policy had lapsed for failure to pay the premium is a matter of the law of insurance.

Restatement § 58 cmt. a, illus. 1–2.  The first illustration corresponds with § 58(1)(a) and contains language that mirrors that subsection.  The second illustration reflects principles presented in both § 58(1)(a) and (1)(b).

¶17    The contrast between the two illustrations sheds light on how § 58 applies in different contexts.  In the first illustration, the only thing the insurer clearly "may not dispute" is "the existence and extent of B's liability to A."  Neither that illustration nor § 58(1)(a) precludes the insurer from litigating the permission issue in a later coverage action to determine whether it must indemnify.  Rather, the illustration states that "applicable law" will determine whether the insurer will "be estopped to deny its liability for indemnification."  Restatement § 58 cmt. a, illus. 1.  As discussed below, ¶¶ 24–37 *infra*, "applicable law" in Arizona does not preclude an insurer from later litigating coverage.

¶18    In contrast, the second illustration states that the insurer will generally be precluded from litigating the permission issue in arguing that the loss was not covered.  The only significant factual difference between the first and second illustration is the process by which judgment was obtained:  the first illustration involves a default judgment, while the second involves a judgment on the merits "[a]fter actual litigation."  Only in the second situation is the insurer precluded from litigating an issue that was "determined in the action" between A and B.  Restatement § 58(1)(b).

Thus, the phrase "determined in the action" in § 58(1)(b) refers to a judicial determination of issues actually litigated.

**¶19** This understanding of § 58's illustrations finds support in the language used in § 58(1)(b), which states that an insurer is precluded from "relitigating" issues, instead of just "litigating" issues. "Relitigation" implies that there was some prior litigation on the issue, which means that "determined in the action" refers to a judicial determination after some prior litigation.

**¶20** Restatement § 57 uses similar language and also supports our interpretation. Under § 57, an indemnitor without an independent duty to defend is only "precluded from relitigating issues determined in the action against the indemnitee if . . . the indemnitor defended the action . . . or . . . the indemnitee defended the action with due diligence and reasonable prudence." Restatement § 57(1)(b). Section 57 thus prohibits the indemnitor from relitigating only those issues determined after prior, actual litigation, as long as one of two conditions not applicable in this case is met. Section 58, on the other hand, does not impose the same conditions. Thus, while both sections refer to prior litigation, § 58 applies even if during the actual litigation, the insurer did not defend and the insured did not defend with due diligence or reasonable prudence. *See* Restatement § 58(1)(b).

**¶21** Based on this analysis, we reject the Quihuises' assertion that issue preclusion "arises from the entry of a judgment against insureds whether after trial or by default." Section 58(1)(b) does not preclude State Farm from litigating the ownership issue in the DJA. That issue was not "determined in the action" because it was not actually litigated and decided by the trial court that entered the stipulated default judgment. This is not to say that the default judgment has no preclusive effect or is meaningless. It precludes State Farm from denying the "existence and extent" of the Coxes' liability — established by the default judgment — under § 58(1)(a), ¶¶ 11–15 *supra*, and it prevents State Farm from avoiding that result simply by crafting a coverage argument that, in essence, merely disputes the Coxes' tort liability. *Wood*, 209 Ariz. at 150 ¶ 37, 98 P.3d at 585.

**¶22** The result does not change simply because the issue that determines coverage also happens to be an element of the liability claim

against the Coxes. In Restatement § 58's illustrations discussed above, the permission issue was just as essential to B's liability as the ownership issue is to the Coxes' liability for negligent entrustment in this case. Yet it is only in the second illustration, which contemplates actual litigation, that the insurer is precluded from litigating the permission issue. These illustrations therefore support the principle that, even when a coverage requirement is also an essential element of the insured's liability, an insurer may later litigate that issue in disputing coverage as long as it was not "determined in the action" through actual litigation.

**¶23** Because ownership was not actually litigated in the underlying tort case, § 58(1)(b) does not preclude State Farm from litigating that issue in the DJA, regardless of whether State Farm and the Coxes had a "conflict of interest" in the underlying case under § 58(2). We note, however, that an insurer generally may contest coverage even if the allegations in the tort action do not themselves create a conflict of interest within the meaning of § 58(2)'s definition. *Cf. Vagnozzi*, 138 Ariz. at 446, 448, 675 P.2d at 706, 708 (adopting Restatement § 58 but also observing that a "conflict of interest" arises "when investigation by the insurer reveals facts which tend to place the claim outside coverage of the policy, yet the question of coverage depends on facts to be litigated in the tort suit," and that "the better rule is to suspend the operation of collateral estoppel where there is an adversity of interests"). Although the allegations of a plaintiff's complaint generally trigger a liability insurer's duty to defend, *see* ¶ 27 *infra*, they should not dictate whether issue preclusion applies. *Cf. Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.*, 12 Ariz. App. 424, 430, 471 P.2d 309, 315 (1970) (holding that insurer's contractual obligation to defend or indemnify was not governed by allegations of complaint against alleged omnibus insured because the creation of such obligations "cannot be left to the imagination of the drafter of a complaint"). Just as a settlement agreement "should not be used to obtain coverage that the insured did not purchase," nor should the choice of allegations in a complaint. *Morris*, 154 Ariz. at 120, 741 P.2d at 253.

## C.

**¶24** The Quihuises, however, argue that the Restatement § 58's first illustration, ¶ 16 *supra*, is directly on point and supports their assertion that State Farm is precluded from litigating the ownership issue in the DJA. That illustration provides that, "under applicable law," the insurer might

be precluded from contesting its liability for indemnification. The Quihuises contend that under Arizona law, State Farm is precluded from litigating the ownership issue because (1) it breached its duty to defend the Coxes; and (2) the Quihuises obtained a default judgment, like the injured party A in the first illustration.

¶25 The Quihuises' argument finds some support in the comment to § 58, which refers to rules in some jurisdictions that "creat[e] strong disincentives against default in performance of the duty [to defend]." Restatement § 58 cmt. a. Alluding to the "applicable law" some states have adopted, the comment states:

> One such rule is that if the indemnitor fails to assume defense of an action involving a claim that "might be found to be" within the indemnity obligation, [the indemnitor] is precluded from contesting not only the existence and extent of the indemnitee's liability to the injured person but also the obligation to indemnify. . . . The terms of these supportive rules are beyond the scope of this Restatement.

*Id.* Thus, the first illustration's statement that "applicable law" might preclude an insurer from "deny[ing] its liability for indemnification" merely refers to the approach some states have taken in this area. The question, then, is whether Arizona law precludes an insurer that refuses to defend its insured from denying its obligation to indemnify, even though § 58 does not itself call for such preclusion.

### 1.

¶26 We turn first to the Quihuises' argument that Arizona law precludes State Farm from litigating the ownership issue in the DJA because it breached its duty to defend. This case differs from *Morris* and *Wood* in that State Farm refused to defend the Coxes in the Quihuises' tort action, even under a reservation of rights. The Quihuises contend that "State Farm's choice not to defend its insured precludes it from collaterally

attacking a default judgment against its insured."  They presume that State Farm had and breached a duty to defend the Coxes.[5]

¶27        It is well settled that a liability insurer's duty to defend is separate from, and broader than, the duty to indemnify.  *See Morris*, 154 Ariz. at 119, 741 P.2d at 252; *see also* Restatement § 58 cmt. a.  A liability insurer's duty to defend generally arises "[i]f the complaint in the action . . . upon its face alleges facts which come within the coverage of the liability policy."  *Kepner v. W. Fire Ins. Co.*, 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973); *see also Morris*, 154 Ariz. at 117, 741 P.2d at 250 ("[T]he insurer must defend claims potentially not covered and those that are groundless, false, or fraudulent.").

¶28        Unlike in some states, in Arizona "there is no absolute duty to defend," especially when "the alleged facts [in the complaint] ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage."  *Kepner*, 109 Ariz. at 331, 509 P.2d at 224.  Although *Kepner* involved a policy exclusion rather than a coverage condition, its reasoning is pertinent here.  The Quihuises' complaint alleged in conclusory fashion that the Coxes owned the Jeep at the time of the accident.  State Farm's post-accident investigation, however, revealed facts outside the complaint — including Carol Cox's written sales agreement with, and transfer of the Jeep's only set of keys to, Norma Bojorquez two weeks before the accident — indicating the Coxes' lack of ownership and therefore lack of coverage for the Jeep. (The policy endorsement stated that "*Your car* does not include a vehicle that *you* no longer own.")

¶29        Contrary to the reasoning in *Kepner*, the proposition urged by the Quihuises would impose on insurers an absolute duty to defend in cases like this in order to avoid being precluded from denying coverage in a DJA, even if a policy clearly does not cover the underlying tort claim against the insured.  For example, in this case, if before the accident the Coxes had executed a sales agreement with Bojorquez, received full payment for the Jeep, and transferred its title and all of the Jeep's keys to Bojorguez, one could not reasonably argue that the Coxes still owned the vehicle.  But

---

[5]        Although the Quihuises alleged in the DJA that State Farm breached its duty to defend the Coxes, the district court did not expressly address or rule on that claim.

under the Quihuises' argument, the bare allegation of ownership in the complaint, State Farm's refusal to defend the Coxes, and the Quihuises' acquisition of a default judgment against the Coxes pursuant to a *Damron* agreement would preclude State Farm from litigating the ownership issue in a later coverage DJA. Such a result defies logic and law. Even had State Farm promptly filed a DJA to establish that the Jeep was not owned and therefore not covered, that scenario could engender the "'race to the courthouse'" that we disapproved of in *Vagnozzi*, 138 Ariz. at 447, 675 P.2d at 707.

¶30        We do not decide if State Farm had a duty to defend the Coxes. But even if State Farm had and breached that duty, that determination would not necessarily control the question of issue preclusion. *See* Windt Treatise § 4.37 ("The vast majority of cases have properly held that an insurer's unjustified refusal to defend does not estop it from later denying coverage under its duty to indemnify."); *see also Flannery v. Allstate Ins. Co.*, 49 F. Supp. 2d 1223, 1227–28 (D. Colo. 1999) ("The majority of jurisdictions . . . do not preclude an insurer from contesting coverage because it breached its duty to defend.") (collecting cases). Although breaching the duty to defend will give rise to "liab[ility] for the damages that the insured thereby incurs, . . . [t]he insurer's breach of contract should not . . . be used as a method of obtaining coverage . . . that the insured did not purchase." Windt Treatise § 4.37; *cf. Morris*, 154 Ariz. at 120, 741 P.2d at 253.

¶31        Citing *Vagnozzi* and *Wood*, in which the insurers defended under a reservation of rights, the Quihuises argue that "[w]hen an insurer refuses to defend, and no conflict of interest exists [under Restatement § 58], it is bound by the facts that are essential to the judgment of liability against its insured." Although dicta in *Vagnozzi* might support that assertion, 138 Ariz. at 445, 675 P.2d at 705, we find that case of limited help because its holding was confined to conflict of interest principles. *Id.* at 448, 675 P.2d at 708 (holding that "where there is a conflict of interest between an insured and his insurer, the parties will not be estopped from litigating in a subsequent proceeding those issues as to which there was a conflict of interest, whether or not the insurer defended in the original tort claim"). Nor did *Vagnozzi* address the meaning or application of Restatement § 58 in a situation like this.

¶32 Referring to "the interplay and confusion of the doctrine of collateral estoppel and the insurer's duty . . . to defend an insured," the Court in *Vagnozzi* stated:

> If the insurance company refuses to defend an action under circumstances where it has a duty to defend, it is bound under the doctrine of collateral estoppel by the facts determined in the trial of such action which are essential to the judgment of tort liability. A party will not be precluded from litigating policy coverage in a subsequent proceeding if the question of coverage turns on facts which are nonessential to the judgment of tort liability.

138 Ariz. at 445, 675 P.2d at 705 (citations omitted). Those statements do not support a finding of issue preclusion here, however, as there was no "trial" in which the ownership issue was actually litigated and determined. In addition, ownership of the Jeep was essential to the Coxes' liability for negligent entrustment only because the Quihuises chose to specifically allege and limit the claim to that element, which fell within the policy's coverage, rather than alleging negligent entrustment more generally or including an alternative element (control) that would not have been covered. *See Acuna v. Kroack*, 212 Ariz. 104, 110 ¶ 22, 128 P.3d 221, 227 (App. 2006) (negligent entrustment claim may be based on defendant's ownership or control of a vehicle); *Tissicino v. Peterson*, 211 Ariz. 416, 419 ¶¶ 8–10, 121 P.3d 1286, 1289 (App. 2005) (same, citing cases); Restatement (Second) of Torts §§ 308, 390 (1965).

¶33 Moreover, applying issue preclusion to deprive an insurer of its coverage defense because the insurer allegedly breaches its duty to defend "subverts any meaningful distinction between the duty to defend and the separate duty to indemnify, and, in many cases, serves no more than to punish the insurer for the breach of a contractual duty." *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 875 P.2d 894, 912 (Haw. 1994). Because "the two duties are truly separate and distinct, . . . an insurer's wrongful failure to defend should not result in a loss of an indemnity defense." *Flannery*, 49 F. Supp. 2d at 1228 (internal quotation marks omitted). Thus, we reject the Quihuises' argument that State Farm is precluded from litigating the ownership issue in the DJA based solely on its refusal to defend the Coxes in the tort action.

**2.**

¶34        We turn next to the Quihuises' contention that because they obtained a default judgment, and thus had more than just a *Damron* agreement, State Farm should be precluded from litigating any coverage issues subsumed in that judgment.   Our cases have not made this distinction, nor does Restatement § 58.  In addition, the Quihuises have not shown why the preclusion rules should change depending on whether the injured party took the further step of having a judge reduce the *Damron* agreement to a stipulated default judgment, without any actual litigation or court finding on the facts that directly pertain to both liability and coverage. *Cf. Morris*, 154 Ariz. at 120, 741 P.2d at 253 ("'Plainly, the [stipulated] 'judgment' does not purport to be an adjudication on the merits; it only reflects the settlement agreement.'") (alteration in *Morris*) (quoting *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982)).  Our statements in *Morris* that "any stipulation of facts essential to establishing coverage would be worthless," and that "[a]n insured's settlement agreement should not be used to obtain coverage that the insured did not purchase," are just as apropos when a default judgment based on stipulated facts is entered pursuant to a *Damron* agreement.  *Id.*

**D.**

¶35        The Quihuises also rely on *Dairyland Insurance Co. v. Richards*, 108 Ariz. 89, 492 P.2d 1196 (1972), in arguing that State Farm may not litigate the ownership issue in the DJA.  We are not persuaded.  The Court in *Dairyland* held that a default judgment entered in a third-party tort action against the insured, based on his negligent driving of a vehicle allegedly owned by another, precluded the insurer "from later questioning [in a garnishment action on coverage] the ownership of the vehicle [the insured] was operating."  *Id.* at 91, 492 P.2d at 1198.  *Dairyland*'s continued authority is questionable, having been eroded by later case law.

¶36        First, after *Dairyland* this Court rejected the notion that an insurer has an "absolute duty" to defend its insured when, despite a complaint's factual allegations that would bring a claim within coverage, investigation reveals facts outside the complaint that clearly indicate a lack of coverage. *Kepner*, 109 Ariz. at 331, 509 P.2d at 224.  At a minimum, *Kepner* qualifies any implication in *Dairyland* regarding the insurer's failure to defend the insured.  108 Ariz. at 90, 492 P.2d at 1197.  Second, *Dairyland*

blurs the distinction between issue and claim preclusion, and the Court's reliance on "res judicata," *id.* at 91, 492 P.2d at 1198, to support its conclusion conflicts with current Arizona law. *See Cheney Bldg. Co.*, 148 Ariz. at 573, 716 P.2d at 30 (distinguishing claim preclusion from issue preclusion and finding the latter requires actual litigation under Restatement § 27). Third, and most importantly, *Dairyland* did not involve a *Damron* or *Morris* agreement and preceded Restatement § 58, *Vagnozzi*, and *Morris*, all of which reconfigured the applicable issue-preclusion principles.

¶37      In light of more recent case law and our interpretation and application of Restatement § 58 here, *Dairyland*'s result would likely differ were that case decided today. *Dairyland* involved a default judgment obtained without actual litigation. 108 Ariz. at 90, 492 P.2d at 1197. At most, then, Restatement § 58(1)(a) would have prevented the insurer from litigating the existence and extent of the insured's liability. Section 58(1)(b), however, would not have precluded the insurer from litigating the ownership issue because that issue was not "determined in the action" between the insured and the claimant. For all these reasons, *Dairyland* is overruled.

**E.**

¶38      In sum, consistent with our prior cases, we hold that when an injured party obtains a default judgment against an insured pursuant to a *Damron* or *Morris* agreement, that judgment will bind the insurer in a coverage case as to the existence and extent of the insured's liability. With the limitation recognized in *Morris* and *Wood*, however, the judgment will not preclude the insurer from litigating its identified basis for contesting coverage, irrespective of any fault or damages assessed against the insured. More specifically, we conclude on the facts presented here that, having determined that coverage on the Jeep ceased to exist before the accident (and thus there was no coverage regardless of any fault or liability of the insureds), State Farm is not bound by the stipulation between the Coxes and the Quihuises as to a fact essential to establishing coverage, despite State Farm's refusal to defend and the entry of a default judgment pursuant to the *Damron* agreement.

¶39      We take this opportunity, however, to emphasize our prior admonition that when an insurer refuses to defend, as State Farm did here,

it does so "at its peril," *Kepner*, 109 Ariz. at 332, 509 P.2d at 225, and if a court later finds coverage, the insurer must pay the damages awarded in the default judgment (at least up to the policy limits) unless it can prove fraud or collusion. *Parking Concepts, Inc.*, 207 Ariz. at 22 ¶ 15 n.3, 83 P.3d at 22 n.3 ("[I]n cases where the insurer has refused to defend and the parties enter into a *Damron* agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness, but rather may contest the settlement only for fraud or collusion.").

¶40        An insurer that refuses to defend additionally opens itself up to the possibility of contract damages if it is found to have breached its duty to defend. *See Vagnozzi*, 138 Ariz. at 448, 675 P.2d at 708; *see also* Windt Treatise § 4.33. And, depending on whether reasonable grounds exist for refusing to defend and denying coverage, the insurer could also face bad faith tort claims. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153–55, 160, 726 P.2d 565, 569–71, 576 (1986); *Acosta*, 214 Ariz. at 383 ¶ 13, 153 P.3d at 404; *see also* Windt Treatise § 9.15. Thus, in cases like this, the prudent practice is for an insurer to defend its insured under a reservation of rights and expeditiously pursue a determination on coverage. This opinion is based on the unique, limited facts presented here and should not be viewed as curtailing a liability insurer's broad duty to defend or permitting insurers to refuse to defend whenever coverage is denied or disputed.

## III.

¶41        We answer the certified question by holding that State Farm is not precluded from litigating, for coverage purposes, who owned the Jeep at the time of the accident.

19