IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**DENNIS E. TEUFEL,**
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, A FOREIGN CORPORATION; KERRY V. HANSON, AN ARIZONA RESIDENT,**
*Defendants/Appellees/Cross-Appellants.*

No. CV-17-0190-PR
Filed June 14, 2018
Amended June 25, 2018

Appeal from the Superior Court in Maricopa County
The Honorable Karen A. Mullins, Judge
No. CV2014-005493
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals
Division One
1 CA-CV 15-0736
Filed May 9, 2017
**AFFIRMED IN PART**

COUNSEL:

Michael J. Raymond (argued), Raymond, Greer & McCarthy, P.C., Scottsdale; Steven S. Guy, The Guy Law Firm, P.L.L.C., Scottsdale, Attorneys for Dennis E. Teufel

Lynn M. Allen (argued), Arman R. Nafisi, Tyson & Mendes, LLP, Phoenix, Attorneys for American Family Insurance Company and Kerry V. Hanson

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICES PELANDER, BOLICK, GOULD, and LOPEZ joined.

———————————————

JUSTICE TIMMER, opinion of the Court:

¶1　　　　Homeowner's policies that insure against personal liability generally require the insurer to defend the insured against claims that fall within the policy's coverage.  We here decide whether a policy exclusion for personal liability "under any contract or agreement" relieves an insurer of defending its insured, an alleged builder–vendor, against a claim for negligent excavation brought by the home buyer.  We hold that the exclusion does not apply to relieve the insurer of its duty to defend because the negligence claim arises from the common law duty to construct the home as a reasonable builder would.

## BACKGROUND

¶2　　　　Dennis Teufel hired Carmel Homes Design Group to build a mountainside home on a vacant lot in Paradise Valley (the "Longlook Property").  He had previously "dabbled in real estate" and "invested money from time to time in a loose partnership [with Carmel Homes Design Group]."  Teufel intended to reside at the Longlook Property, and at the start of construction he purchased a homeowner's policy from American Family Mutual Insurance Company ("American Family"), which insured against personal liability.

¶3　　　　Teufel changed his mind about living at the Longlook Property.  Thus, in May 2011, after construction was completed, he sold that property to Cetotor, Inc. ("Cetotor"), and the homeowner's policy coverage ended.  The real estate purchase contract governing this sale is not in the record.

¶4　　　　Teufel purchased a home in Scottsdale (the "82nd Place Property"), moved in, and bought a new homeowner's policy from American Family.  This policy also provided personal liability coverage and obligated American Family to defend Teufel against claims seeking "compensatory damages for which any insured is legally liable" because of "bodily injury or property damage caused by an occurrence."  The policy defined "occurrence" as "an accident . . . which results during the policy

2

period, in . . . bodily injury . . . or . . . property damage." The policy was effective from January 2012 through January 2013.

¶5        Rockslides occurred on the Longlook Property in November 2011 and August 2012, allegedly as the result of improper excavation during construction, which damaged the property. In November 2012, Cetotor sued Teufel, alleging he was a builder–vendor and asserting breach of contract, negligence, and fraud-based claims.

¶6        Teufel tendered defense of Cetotor's complaint to American Family under the Longlook Property and the 82nd Place Property policies. American Family declined the tender of defense on the grounds there was no coverage under either policy.

¶7        Teufel sued American Family and its agent, seeking damages and declaratory relief. The superior court granted summary judgment in favor of American Family. The court found that Cetotor's property damage occurred outside the Longlook Property policy period so no "occurrence" triggered coverage under that policy. Although the court found that the property damage from the August 2012 rockslide was an "occurrence" during the 82nd Place Property policy period, and the policy's "business pursuits" exclusion did not apply, it ruled there was no coverage per the policy's "contractual liability" exclusion. As a result, American Family had no duty to defend.

¶8        The court of appeals affirmed the summary judgment with respect to the Longlook Property policy but reversed with respect to the 82nd Place Property policy. *Teufel v. Am. Family Mut. Ins.*, 1 CA-CV 15-0736, 2017 WL 1882330, at *1 ¶ 1 (Ariz. App. May 9, 2017) (mem. decision). The court of appeals disagreed with the superior court that the contractual liability exclusion applied. *Id.* at *3 ¶ 13. (The court also rejected American Family's cross-appeal argument that the 82nd Place Property policy's "business pursuits" exclusion applied. *Id.* at *4 ¶ 18. Because American Family did not seek review of that decision, we do not address it.)

¶9        We granted review to decide the applicability of the contractual liability exclusion in the 82nd Place Property policy. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

### I. Principles of review

¶10      We review a grant of summary judgment de novo. *SolarCity Corp. v. Ariz. Dep't of Rev.*, 243 Ariz. 477, 480 ¶ 8 (2018). Likewise, we review de novo the meaning of insurance policies. *See Sparks v. Republic Nat'l. Life Ins.*, 132 Ariz. 529, 534 (1982). We accord words used in policies their plain and ordinary meaning, examining the policy "from the viewpoint of an individual untrained in law or business." *Desert Mountain Props. Ltd. v. Liberty Mut. Fire Ins.*, 225 Ariz. 194, 200 ¶ 14 (App. 2010), *aff'd*, 226 Ariz. 419 (2011). If a policy is subject to "conflicting reasonable interpretations," it is ambiguous, *State Farm Mut. Auto. Ins. v. Wilson*, 162 Ariz. 251, 258 (1989), and we interpret it by examining, as pertinent here, the "transaction as a whole," *First Am. Title Ins. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397 ¶ 8 (2008). If an ambiguity remains, we construe it against the insurer, *id.*, particularly when the ambiguity involves an exclusionary clause, *see Sec. Ins. Co. of Hartford v. Andersen*, 158 Ariz. 426, 428 (1988); 2 Couch on Insurance § 22:31 (3d ed.) (stating that exceptions to coverage are "strictly construed against the insurer").

### II. Scope of the duty to defend

¶11      A liability insurer's duty to defend, which is separate from and broader than its duty to indemnify, generally arises if the complaint filed against the insured alleges facts that fall within the policy's coverage. *See Quihuis v. State Farm Mut. Auto. Ins.*, 235 Ariz. 536, 544 ¶ 27 (2014); *see also Lennar Corp. v. Auto-Owners Ins.*, 214 Ariz. 255, 260–61 ¶ 11 (App. 2007) (stating that a duty to defend exists when the third-party suit "alleg[es] facts that, if true, would give rise to coverage, even though there would ultimately be no obligation to indemnify if the facts giving rise to coverage were not established"). The insurer may investigate the matter, however, and refuse to defend based on facts discovered outside the complaint that take the case outside coverage. *See Quihuis*, 235 Ariz. at 544 ¶ 28; *Kepner v. W. Fire Ins. Co.*, 109 Ariz. 329, 331–32 (1973). But if any claims fall within policy coverage, the insurer must defend against all claims, including "claims potentially not covered and those that are groundless, false, or fraudulent." *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 117 (1987); *see also Quihuis*, 235 Ariz. at 544 ¶ 27 (citing quoted language from *Morris* with approval); *W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.*, 130 Ariz. 76, 79–

80 (App. 1981) (finding a duty to defend all claims so long as there is any claim that falls within the policy's coverage).

## III. Application

### A. The contractual liability exclusion

¶12 American Family concedes that an "occurrence" of "property damage" happened during the 82nd Place Property policy term, and it must therefore defend Teufel against Cetotor's complaint unless a policy exclusion applies. Accordingly, the only issue here is whether, as a matter of law, the contractual liability exclusion relieves American Family of the duty to defend.

¶13 The contractual liability exclusion to personal liability coverage in the 82nd Place Property policy provides: "Contractual Liability. We will not cover personal liability under any contract or agreement." The dispute here concerns the meaning of "under any contract or agreement" and whether it includes personal liability based on Cetotor's negligence claim. The policy does not define "under." And because fifteen other policy exclusions for personal liability use the term "arising out of," it is unclear whether "under" carries a different meaning.

¶14 The superior court saw no meaningful distinction between "under" and "arising out of." It reasoned that using either definition, Teufel's potential liability to Cetotor for negligence is "necessarily 'under a contract'" because liability would not exist "absent the underlying real estate purchase contract." The court of appeals rejected that reasoning, concluding that Cetotor's negligence claim was "entirely independent" of the contract between Cetotor and Teufel, which only "placed the parties within tortious striking range of one another, but . . . was otherwise unrelated to liability." *Teufel*, 1 CA-CV 15-0736, 2017 WL 1882330, at *3 ¶ 13.

¶15 American Family urges us to adopt the superior court's interpretation of the contractual liability exclusion. It points out that nothing limits the exclusion's application to liability based solely on a breach of contract. According to American Family, "under" should be broadly interpreted to mean that the exclusion applies to liability that could not exist "but for" a contract, "irrespective of whether the liability is related to or independent of the contract." It then concludes that Cetotor's negligence claim falls within the exclusion because "without entering into

the real estate contract with Teufel, Cetotor would not have been exposed to the effects of the alleged defective excavation."

**¶16**        Teufel, unsurprisingly, favors the court of appeals' construction.  He argues that because the exclusion does not mention tort liability, "under" should be construed narrowly as referring to liability governed solely by a contract.  He concludes that the exclusion "eliminates coverage for contractual liability and only contractual liability" and does not apply to tort liability.

**¶17**        The parties' conflicting interpretations are each reasonable, and the exclusion is therefore ambiguous.  *See Wilson*, 162 Ariz. at 258.  We resolve the ambiguity by examining the transaction as a whole, including the policy language and the insured's reasonable expectations.  *See Action Acquisitions, LLC*, 218 Ariz. at 397 ¶ 8; *Wilson*, 162 Ariz. at 258.

**¶18**        We start with the policy's language.  Whether or not "under" and "arising out of" carry different meanings, neither supports the "but for" construction.  Webster's defines "under" in the contractual context as "required by," "in accordance with," and "bound by."  *Under*, Webster's Third New International Dictionary 2487 (2002).  "Arise" means "to originate from a specified source" or "to come into being."  *Arise*, *id*. at 1117.  Applying these definitions, the contractual liability exclusion applies to personal liability required by or originating from a contract; it is not triggered simply because a contract brought the injured party and the insured together.  As American Family acknowledged during oral argument, the exclusion would not apply, for example, if an insured under this policy contracted with a business to replace his car's windshield but negligently failed to warn the business that a vicious dog was in the car, resulting in the insured's personal liability for a bitten worker's injuries.  The worker's negligence claim would "stand alone" from the contract.

**¶19**        An insured's reasonable expectations under this policy also suggest that the contractual liability exclusion does not apply to liability based on a stand-alone tort claim that is viable apart from any contract between the injured party and the insured.  Nothing in the exclusion suggests such a restriction.  Indeed, the exclusion is titled "Contractual Liability."  *Cf. Darner Motor Sales, Inc. v. Universal Underwriters Ins.*, 140 Ariz. 383, 389 (1984) (recognizing that "reasonable expectations" are those "induced by the making of a promise" (quoting 1 Arthur L. Corbin, *Corbin on Contracts* § 1, at 2 (1963))).  In short, an insured would reasonably

expect the insurer to defend against a stand-alone tort claim despite the existence of a contract with the injured party.

¶20 Finally, even assuming any lingering doubt about the breadth of the exclusion, we strictly construe it in favor of Teufel as the insured. *See Action Acquisitions, LLC*, 218 Ariz. at 397 ¶ 8; *Andersen*, 158 Ariz. at 428. If American Family had intended to exclude third-party claims that would not exist "but for" a contract, as the policy's drafter it should have expressly communicated this intention. *See Sparks*, 132 Ariz. at 535 ("[I]f an insurer desires to limit its liability under a policy, it should employ language which clearly and distinctly communicates to the insured the nature of the limitation.").

¶21 In sum, regardless of the precise meaning of "under" in the contractual liability exclusion and whether the exclusion applies solely to liability based on breach-of-contract claims, issues we need not resolve here, the exclusion does not absolve American Family of its duty to defend an insured against stand-alone tort claims. We next decide whether Cetotor alleges such a claim.

## B. Cetotor's negligence claim

¶22 In addition to its contract claims, Cetotor alleges in its first amended complaint that "[a]s a builder-vendor," Teufel "negligently performed or negligently supervised the hillside grading and slope cut" for the Longlook Property. Cetotor alleges resulting property damage, including "damage to the outside HVAC units, broken bay windows, broken interior marble flooring, damage to the exterior stucco, [and] costs to remove rock."

¶23 American Family contends that Cetotor's negligence claim is not a stand-alone claim because the duty underlying that claim was created solely by the real estate purchase contract. Specifically, American Family argues that because Cetotor sued Teufel as a builder–vendor, any duty he owed Cetotor arose at the time the parties executed the contract. And despite the negligence label used in the complaint, Cetotor's claim is based on Teufel's failure to fulfill its contractual duty to deliver the Longlook Property free of defects and in a habitable condition. We disagree.

¶24 American Family necessarily, but incorrectly, bases its argument on the premise that a purchaser is limited to contract remedies for a builder–vendor's negligence in constructing a home. This Court in *Woodward v. Chirco Construction Co.*, 141 Ariz. 514 (1984), declared

otherwise. The issue there was whether the limitations period for tort claims or contract claims applied to a homeowner's breach-of-implied-warranty complaint filed against a builder–vendor. *Id.* at 515–16. In its discussion, the Court acknowledged that a builder has a "common law duty of care" and concluded that both tort and contract claims can exist when a home is negligently constructed:

> [W]e agree with those jurisdictions that have held that injury incurred due to negligent construction of a residence may give rise to an action for breach of the implied warranty of workmanlike performance and habitability and an action for breach of the contractor's common law duty of care. . . . We see no reason to preclude a purchaser from claiming damages in contract and in tort. The purchaser of a home can seek to recover in contract for defects in the structure itself as such defects render the home less than the purchaser bargained for. . . . The purchaser can also seek to recover in tort for injuries sustained due to the contractor's failure to construct the home as a reasonable contractor would. For example, if a fireplace collapses, the purchaser can sue in contract for the cost of remedying the structural defects and sue in tort for damage to personal property or personal injury caused by the collapse. Each claim will stand or fail on its own; a distinct statute of limitation applies to each.

*Id.* Thus, *Woodward* recognized that a builder–vendor owes a common law duty of care that is independent of a contractual duty. *See id.* at 516 ("Negligence, however, requires that a builder or contractor be held to a standard of reasonable care in the conduct of its duties to the foreseeable users of the property." (quoting *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1045 (Colo. 1983))); *see also Barmat v. John & Jane Doe Partners*, 155 Ariz. 519, 523 (1987) (observing that tort duties "are often owed to all those within the range of harm or at least to some considerable class of people that can include parties to a contract" (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 92, at 655 (5th ed. 1984))).

¶25 American Family dismisses the above-quoted language in *Woodward* as dicta. Even if we accept that characterization, we have since recognized these statements as authoritative. *See Sirrah Enters., LLC v. Wunderlich*, 242 Ariz. 542, 545 ¶ 10 (2017) ("We decided [in *Woodward*] that negligent construction of a residence can simultaneously support contract damages for breach of the [implied warranty of workmanlike performance

and habitability] and tort damages for any personal injury or damaged personal property caused by the contractor's negligence.").

¶26 American Family also asserts that *Woodward* is inapplicable because Teufel was not the builder, and Cetotor therefore cannot maintain its negligence action. But this argument addresses the merits of Cetotor's negligence claim, which is not a consideration in deciding whether American Family is required to defend Teufel against the claim. *See Quihuis*, 235 Ariz. at 544 ¶ 27; *Morris*, 154 Ariz. at 117. (Similarly, whether Cetotor's negligence claim can withstand other defenses, such as application of the economic loss doctrine, does not impact whether American Family is required to defend against the claim and assert those defenses.)

¶27 American Family cites some decisions of federal district courts, which ruled that homeowner insurers had no duty to defend insureds against tort claims for defective construction because the tort duties were created by real estate purchase contracts. But these cases conflict with *Woodward*'s recognition that tort duties can arise independently of contractual duties, and we therefore reject those decisions. *See Am. Nat'l Prop. & Cas. Co. v. Blocker*, 165 F. Supp. 2d 1288, 1299 (S.D. Ala. 2001) ("[W]ithout the residential sales contract, [seller] would not have had a duty of care towards the [buyers]."); *Allstate Ins. v. Morgan*, 806 F. Supp. 1460, 1464 (N.D. Cal. 1992) ("[B]ut for that contract, there could be no claim for negligence."); *Allstate Ins. v. Hansten*, 765 F. Supp. 614, 616 (N.D. Cal. 1991) ("Without the contract, the [sellers] would have had no duty of care towards the [buyers].").

¶28 We agree with Teufel and the court of appeals that Cetotor alleges a stand-alone negligence claim in its amended complaint that is independent of the real estate purchase contract. *See Teufel*, 1 CA-CV 15-0736, 2017 WL 1882330, at *3 ¶ 13. As contemplated by *Woodward*, Cetotor's negligence claim rests on a builder's common law duty to construct a home as a reasonable builder would. That claim does not seek contract damages for defects in the excavation but instead seeks compensation for property damage caused by the negligent excavation. Any personal liability imposed on Teufel would not be required by or originate from the contract with Cetotor.

¶29 In sum, the contractual liability exclusion does not relieve American Family of its duty to defend Teufel against Cetotor's negligence claim. Therefore, American Family must defend Teufel against all claims

alleged by Cetotor, *see Morris*, 154 Ariz. at 117, unless another exclusion applies or other facts outside this record "take the case outside policy coverage," *Transamerica Ins. v. Meere*, 143 Ariz. 351, 360 (1984).

## CONCLUSION

¶30 We affirm paragraphs twelve and thirteen of the court of appeals' memorandum decision. We reverse the superior court's summary judgment concerning American Family's duty under the 82nd Place Property policy to defend Teufel against Cetotor's claims and remand to that court for further proceedings.