83 P.3d 19

PARKING CONCEPTS, INC., an Arizona corporation; John K. Tillison; and Lawrence Tantillo, Plaintiffs–Appellees,

v.

Gary TENNEY and his wife, Dee Tenney; Scott Jackson Brokerage, Inc., an Arizona corporation, Defendants–Appellees,

and

Gulf Underwriters Insurance Co., a Missouri corporation, Garnishee–Appellant.

Gulf Underwriters Insurance Co., a Missouri corporation, Plaintiff–Appellant,

v.

Parking Concepts, Inc., an Arizona corporation; John K. Tillison; Lawrence Tantillo; Gary Tenney and his wife, Dee Tenney; Scott Jackson Brokerage, Inc., an Arizona corporation; and Core/Jackson, Inc., an Arizona corporation, Defendants–Appellees.

No. CV–02–0439–PR.

Supreme Court of Arizona, En Banc.

Jan. 14, 2004.

**20**

Hopkins & Kreamer, L.L.P. by Joseph C. Kreamer, Stephen M. Hopkins, Phoenix, Attorneys for Parking Concepts, Inc., Tillison, and Tantillo.

Wright & Associates by Lawrence C. Wright, Lee Allen Johnson, Mesa, Attorneys for Tenney and Scott Jackson Brokerage, Inc.

Jardine, Baker, Hickman & Houston by Gerald T. Hickman, Phoenix, Attorneys for Gulf Underwriters Insurance Company.

## OPINION

HURWITZ, Justice.

¶ 1 In holding that a judgment stipulated to pursuant to a *Morris* agreement was reasonable, the superior court in this case relied on the fact that the insureds could have lost their real estate licenses as a consequence of an adverse result in the underlying action. We granted review to decide whether such potential consequences to an insured should be considered in determining the reasonableness of a *Morris* settlement.

### I.

¶ 2 This case arises out of a real estate transaction. Gary Tenney brokered the deal, under which Parking Concepts, Inc. ("PCI") would acquire an airport parking lot. PCI claimed that Tenney misrepresented the tax liability relating to the property, and sued Tenney and his employer, Scott Jackson Brokerage ("SJB"), alleging fraud, negligent misrepresentation, and breach of contract.

¶ 3 SJB and its employees were insured by Gulf Underwriters Insurance Company ("Gulf") under an errors and omissions liability policy with policy limits of $1,000,000. The policy excluded coverage for fraudulent acts. Because PCI's suit alleged fraud, Gulf defended Tenney and SJB under a reservation of rights. After two years of pre-trial

proceedings, Tenney and SJB insisted that Gulf either settle the case or withdraw its reservation of rights and defend unconditionally. When Gulf declined to do either, PCI, SJB and Tenney executed a *"Morris* agreement," under which the defendants stipulated to a judgment and assigned their rights under the Gulf policy to PCI in return for PCI's covenant not to execute the judgment against the insureds. *See United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987).[1] Under the *Morris* agreement in this case, Tenney and SJB agreed to a $430,000 judgment in favor of PCI on the negligent misrepresentation claim, of which Tenney would personally pay $35,000. PCI also agreed to dismiss its fraud claims.

¶ 4 PCI then instituted a garnishment proceeding against Gulf, seeking to collect the stipulated judgment. In that proceeding, in addition to various policy defenses, Gulf argued that the *Morris* agreement was invalid because it was a product of fraud or collusion and because the amount of the stipulated judgment was unreasonable. *See id.* at 119, 741 P.2d at 252 (holding that *Morris* agreements must be made "without fraud or collusion"); *id.* at 120, 741 P.2d at 253 (holding that stipulated settlement is not binding on insurer unless "reasonable").

¶ 5 The superior court granted judgment to PCI. It rejected Gulf's various policy defenses and held that the *Morris* agreement was neither a product of fraud or collusion nor unreasonable in amount. Although finding the $430,000 stipulated judgment to be "perhaps in the very high end of the range within which a settlement might have been expected to occur," the superior court expressly relied on the testimony of PCI's expert in finding that settlement amount reasonable. That expert had opined that the settlement amount was reasonable in part because Tenney and SJB faced the potential

---

1. In this opinion, we use the term *"Morris* agreement" to describe a settlement agreement entered into when the insurer is defending under a reservation of rights, under which the insured stipulates to a judgment, assigns his rights against the insurer to the claimant, and receives in return a covenant from the claimant not to execute against the insured. *See Munzer v. Feola,* 195 Ariz. 131, 133 ¶ 11, 985 P.2d 616, 618 (App.1999) (describing a *"Morris* agreement"). An agreement with the same general characteristics entered into when the insurer refuses to defend is referred to as a *"Damron* agreement." *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969).

loss of their real estate licenses from an adverse judgment.

¶ 6 Gulf appealed. In a memorandum decision, the court of appeals affirmed both the superior court's findings regarding policy coverage and its finding that the *Morris* agreement was not a product of fraud or collusion. *Parking Concepts, Inc. v. Tenney,* 1 CA–CV 00–0129 (Ariz.App. Apr. 15, 2003) (mem.decision). In a separate opinion, the court of appeals vacated the superior court's determination that the stipulated judgment was reasonable in amount. *Parking Concepts, Inc. v. Tenney,* 203 Ariz. 562, 564 ¶ 10, 58 P.3d 44, 46 (App.2002). The court of appeals so held because it believed that "Tenney and SJB risked losing their licenses only in the event that PCI prevailed on its fraud claim." *Id.* ¶ 8, 58 P.3d 44. Because the insurance policy excluded coverage for fraudulent acts, the court of appeals concluded that this "potential consequence of a fraud judgment" could not be considered as bearing on the reasonableness of the *Morris* settlement. *Id.* ¶ 9, 741 P.2d 246; *see id.* ¶ 8 ("Insureds may not expand their coverage through stipulated agreements any more than they can stipulate that the underlying conduct was insured rather than uninsured.").

¶ 7 Gulf then petitioned for review of the memorandum decision and PCI petitioned for review of the opinion. We denied Gulf's petition and granted PCI's petition only as to the first issue presented: "Whether the practical effect of an adverse judgment may be considered in evaluating the reasonableness of a *Morris* agreement settlement." We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") § 12–120.24 (2003), and Arizona Rule of Civil Appellate Procedure 23(c)(3).

## II.

¶ 8 The opinion below rested on the premise that Tenney and SJB risked losing their licenses only in the event that PCI prevailed on its fraud claim. *Parking Concepts,* 203 Ariz. at 564 ¶ 8, 58 P.3d at 46. Because fraudulent conduct was not covered by the policy, the court of appeals held that the trial court erred in considering "a consequence against which the policy did not insure." *Id.* ¶ 9, 58 P.3d 44.

¶ 9 However, Tenney and SJB faced the risk of losing their licenses even as a consequence of negligent conduct. The real estate commissioner may revoke a license if the holder has, in the performance of his brokerage activities, "[p]ursued a course of misrepresentation or made false promises." A.R.S. § 32–2153(A)(1) (Supp.2003). The statute does not require that the misrepresentations or false promises be intentional. *Id; see also id.* § 32–2153(A)(22) (providing that the commissioner may revoke a license for "demonstrated negligence"). Moreover, as PCI's expert testified, if the real estate recovery fund were utilized to satisfy a negligent misrepresentation judgment against Tenney or SJB, the brokers' licenses would be automatically terminated until the fund was repaid and the judgment satisfied in full. *See id.* § 32–2188(I) (Supp.2003).[2]

¶ 10 The superior court found that Tenney's acts were at most negligent; the memorandum decision of the court of appeals affirmed that finding, and we denied review. Because the relevant statutes provide that a possible consequence of that negligent conduct was the revocation of the licenses held by Tenney and SJB, we are therefore required to consider the issue that the court of appeals did not reach—whether it is proper to consider collateral consequences flowing from *insured* conduct in evaluating *Morris* agreements for reasonableness.

## III.

¶ 11 The starting point is our opinion in *Morris.* In *Morris,* adopting the approach of *Miller v. Shugart,* 316 N.W.2d 729 (Minn. 1982), we held that an insured defended un-

---

**2.** An aggrieved client of a broker may apply for payment from the real estate recovery fund upon obtaining a judgment against the broker "based upon the licensee's act, representation, transaction or conduct in violation of [the governing statutes or rules promulgated by the commissioner]." A.R.S. § 32–2188(C). Thus, recourse may be had against the fund even when the broker has not engaged in fraudulent conduct.

der a reservation of rights may enter into a settlement with a claimant without breaching the cooperation clause of the insurance policy. *Morris,* 154 Ariz. at 119–20, 741 P.2d at 252–53. The insured in *Morris* stipulated to a monetary judgment and assigned his rights against the insurer to the claimant, who in return covenanted to collect the judgment solely from the insurer. *Id.* at 115, 741 P.2d at 248.

¶ 12 Our decision in *Morris* recognized that the insurer and insured have valid "conflicting interests" when a defense is offered with a reservation of rights. *Id.* at 117, 741 P.2d at 250. On the one hand, it is clear that an insurer with a good faith potential coverage defense may appropriately perform its contractual duty to defend while simultaneously reserving the right to later assert the defense. *See, e.g., Farmers Ins. Co. of Ariz. v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703 (1983); *Morris,* 154 Ariz. at 118, 741 P.2d at 251 (citing *Vagnozzi* and holding that the insurer "properly reserved its rights to later assert the policy's intentional act exclusion"). But even though the insurer breaches no contractual duties by a proper reservation of rights, as a practical matter such a course of action places an insured in a "precarious position." *Morris,* 154 Ariz. at 118, 741 P.2d at 251. The insured not only faces the potential of a judgment in excess of policy limits; even a judgment within policy limits may turn out, after litigation of the insurer's defenses, not to be covered under the policy. *Id.*

¶ 13 *Morris* attempted to reconcile these conflicting interests. In order to allow the insured to protect himself from "the sharp thrust of personal liability," *id.,* we held that the cooperation clause of the insurance contract did not prohibit settlements between the insured and the claimant when the insurer defends under a reservation of rights. *Id.* at 119, 741 P.2d at 252. To protect the insurer, we held that a *Morris* agreement must be preceded by appropriate notice to the insurer; if the insurer then removes its reservation of rights and "unconditionally as-

sumes liability under the policy," the cooperation clause's prohibition against settling without the insurer's consent applies in full force. *Id.* We also held that such agreements must be free of "fraud or collusion." *Id.*

¶ 14 *Morris* also recognized that "[p]ermitting the insured to settle with the claimant presents a great danger to the insurer." *Id.* The insured entering into a *Morris* agreement will, by virtue of the standard covenant not to execute, usually face no personal liability for the stipulated judgment. He will therefore have little incentive to minimize the amount of the judgment. *See id.* at 120, 741 P.2d at 253 ("[A]n insured being defended under a reservation might settle for an inflated amount or capitulate to a frivolous case merely to escape exposure or further annoyance."). The claimant, on the other hand, has every incentive to obtain the largest judgment possible. Thus, neither party to the standard *Morris* agreement has any compelling reason to act reasonably in setting the settlement amount.

¶ 15 We resolved that dilemma in *Morris* by holding that "neither the fact nor amount of liability to the claimant is binding on the insurer unless the insured or claimant can show that the settlement was reasonable and prudent." *Id.*[3] Although the burden is on the insured (or in the usual case, the claimant, as assignee of the insured's rights against the insurer) to prove that the settlement was reasonable and prudent, he "need not establish, however, that he would have lost the case; he need only establish that given the circumstances affecting liability, defense, and coverage, the settlement was reasonable." *Id.* The underlying question "as to whether a settlement was reasonable and prudent is what a reasonably prudent person in the insured's position would have settled for on the *merits* of the claimant's case." *Id.* at 121, 741 P.2d at 254.

**IV.**

¶ 16 In this case, after the parties entered into the *Morris* agreement, PCI, as the in-

---

**3.** In contrast, in cases where the insurer has refused to defend and the parties enter into a *Damron* agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness, but rather may contest the settlement only for fraud or collusion. *See Damron,* 105 Ariz. at 153, 460 P.2d at 999.

sureds' assignee, instituted a garnishment proceeding against Gulf in order to assert the insureds' rights under the insurance contract. The superior court held that the fraud exclusion in the insurance contract did not apply, but rather that Tenney's acts and omissions that were the subject of the complaint were at worst negligent. This ruling, which resolved the issue of coverage, was affirmed by the court of appeals and is no longer at issue by virtue of our denial of review. The superior court also held that the agreement was not the product of fraud or collusion. This ruling is similarly no longer at issue. Rather, the only remaining question is whether the *amount* of the settlement was reasonable. And, as to that question, the only issue before us is whether, in evaluating reasonableness, the superior court could properly take into account that Tenney and SJB might have lost their real estate brokers' licenses from an adverse judgment in the underlying litigation.

### A.

¶ 17 The "reasonableness" inquiry mandated by *Morris* has been the subject of several reported Arizona opinions. *See, e.g., Himes v. Safeway Ins. Co.*, 205 Ariz. 31, 38–40 ¶¶ 20–26, 66 P.3d 74, 81–83 (App.2003); *Munzer v. Feola*, 195 Ariz. 131, 136 ¶¶ 30–31, 985 P.2d 616, 621 (App.1999). However, no Arizona case has squarely addressed whether the superior court may consider potential practical consequences for the insured from an adverse monetary judgment in determining whether the settlement amount was reasonable.

¶ 18 Both PCI and Gulf claim that language in *Morris* resolves the issue. PCI stresses our statement that "[t]he test of whether the settlement was reasonable and prudent is what a reasonably prudent person in *the insured's position* would have settled for . . . ." *Morris*, 154 Ariz. at 121, 741 P.2d at 254 (emphasis added). PCI therefore argues that the individual insured's perspective, including the danger of collateral consequences to that insured from further litigation, is properly taken into account in evaluating the amount of the settlement. *Cf. Himes*, 205 Ariz. at 39 ¶ 23, 66 P.3d at 82 (describing

"reasonably prudent person" as a person who has "the ability to pay a reasonable settlement amount from his or her own funds" and "makes a settlement decision as though the settlement amount came from those personal funds"). Gulf in turn notes that the very sentence cited above ends with the phrase "on the *merits* of the claimant's case." *Morris*, 154 Ariz. at 121, 741 P.2d at 254. It therefore argues that the peculiar circumstances of the insured have no place in the reasonableness evaluation and that the inquiry should be limited to objective factors involving liability and the damages aspects of the claimant's case.

¶ 19 Although each side finds comfort in the language of *Morris*, our opinion in that case neither directly confronted nor decided the issue before us today, and the general statements quoted were therefore not intended to resolve the issue. Because *Morris* does not answer the issue before us, we return to the interests at issue in a *Morris* agreement and to the reasons that underlie the *Morris* rule.

### B.

¶ 20 The insurer in *Morris* honored its contractual duty to defend the claim against its insured, while at the same time properly reserving its eventual right to contest coverage under the policy's intentional acts exclusion. *Id.* at 118, 741 P.2d at 251. But even though the insurer was "honestly attempting to perform its duties," we recognized that even a good-faith reservation of rights placed the insureds in the "precarious position" of facing "financial catastrophe" if liability were imposed at trial and the coverage issue was later resolved adversely to the insured. *Id.* Yet, because of the cooperation clause of the insurance contract, the insureds could not attempt to limit their potential exposure by directly pursuing a settlement with the claimant. *Id.*

¶ 21 The dilemma in which insureds find themselves under such circumstances is largely a product of timing. If the issue of policy coverage could be completely resolved before the suit by the claimant went forward, insureds would know with certainty whether or not the insurer had liability under the

insurance policy. If no policy coverage were present, the insureds would be free to handle the claim on their own. On the other hand, if it were established that the claim was covered under the policy, the insurer would be required under its contract of insurance not only to defend any lawsuit, but also to indemnify the insureds against liability and to act in good faith in considering settlement proposals. *See Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137, 735 P.2d 451, 459 (1987).

¶ 22 But it may often be difficult, if not impossible, to resolve the coverage issue before the underlying suit by the claimant proceeds. The claimant, who is not a party to the insurance contract, ordinarily cannot and should not be compelled to await the outcome of satellite coverage litigation before seeking redress for his injuries. Furthermore, the issue of whether coverage exists often cannot effectively be resolved until the claimant's litigation is completed. *See* 22 *Appleman on Insurance 2d: Law of Liability Insurance* § 136.7 (Holmes ed.2003). If for example, the policy covers negligent but not fraudulent acts, and the claimant alleges both fraud and negligence, it may be necessary for the underlying litigation to be resolved before the insurer can determine the nature of the acts for which liability is imposed and the applicability of the exclusion. And, both the insured and insurer may prefer not to engage in costly coverage litigation if they believe that they will ultimately be successful in defending the case on the merits.

¶ 23 For these reasons, *Morris* allowed the insurer to defend the claim under a reservation of rights and expressly rejected the approach taken in other jurisdictions in which the insured was allowed to reject a defense offered under reservation of rights, thus forcing the insurer to either defend unconditionally or refuse to defend at its peril. 154 Ariz. at 118–19, 741 P.2d at 251–52. But to protect the insured, we held that the insurer in return cannot invoke the cooperation clause of the policy to prevent "the insured [from taking] reasonable measures to protect himself against the danger of personal liability." *Id.* at 119, 741 P.2d at 252.

¶ 24 Thus, while the cooperation clause of the insurance contract normally allows only the insurer to negotiate a settlement, when the insurer defends under a reservation of rights, *Morris* permits the insured to step into the insurer's shoes for purposes of settlement negotiations. In this limited circumstance, *Morris* allows the insured to act as a *surrogate* for the insurer; he is engaging in settlement discussions that the insurer would typically have undertaken in the absence of the reservation of the right to contest coverage. *See id.* ("The insurer's reservation of the privilege to deny the duty to pay relinquishes to the insured control of the litigation . . . .").

¶ 25 *Morris* thus affects the contract of insurance in but one way—it holds that when the insurer defends under a reservation of rights the cooperation clause may not be invoked to prevent the insured from entering into a settlement without the insurer's consent. *Morris* neither imposes new contractual duties on the insurer nor otherwise expands the rights of the insured under the contract of insurance.

¶ 26 We therefore conclude that when evaluating a *Morris* settlement for reasonableness, the superior court should apply the same criteria that must be applied by the insurer under its implied contractual covenant of good faith and fair dealing in evaluating a settlement proposal in the absence of a reservation of rights. These include "the facts bearing on the liability and damages aspects of claimant's case, as well as the risks of going to trial." *Id.* at 121, 741 P.2d at 254. The insurer is also contractually required to consider, even when the merits of the claimant's case are fairly debatable, the financial risk that an adverse judgment in excess of policy limits may have on the insured. *See Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 260, 792 P.2d 719, 723 (1990).

¶ 27 But we find no support for the notion that the contract of insurance requires an insurer, when evaluating a settlement proposal of a third-party claimant, to consider whether a judgment or trial will have an adverse effect on the insured other than the imposition of monetary liability. Certainly,

the errors and omissions policy in this case placed no such express obligation on the insurer, which agreed only to indemnify SJB and Tenney for "sums" they "bec[a]me legally obligated to pay as [d]amages" as a result of covered conduct. Nothing in the policy suggests that Tenney and SJB purchased insurance against any consequences of their covered conduct other than the imposition of monetary damages. *See Charter Oak Fire Ins. Co. v. Color Converting Indus. Co.*, 45 F.3d 1170, 1172 (7th Cir.1995) (finding no basis for "interpolating into a contract of liability insurance a promise by the insurer to handle a claim in a manner that will minimize the business risk, as distinct from the liability risk, to the insured"); Allan D. Windt, 1 *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds* § 5:1 at 491 & n. 15 (4th ed.2001) (noting that the "better rule" is that insurers do not have to consider risks against which they did not insure, including business, as distinct from liability, risks).

¶ 28 An example illustrates the point. Assume that one of the conditions of an individual's employment is that he not consume alcohol. Nonetheless, the individual imbibes too much at a private party, causing a car accident in the host's driveway resulting in no personal injury and $100 in property damage to the claimant's automobile. The claimant demands a $50,000 settlement, knowing that the individual will not want to be named in a lawsuit alleging that he was driving while intoxicated, because if his employer learns of this, the tort defendant will lose his job. From the standpoint of the insured, paying $50,000 to avoid the "collateral" adverse consequences of a lawsuit might be reasonable; indeed, the insured might well have been willing to pay this amount out of his own pocket if not insured. But it could hardly be contended that his insurer is required under its contract of indemnity to agree to such a settlement. Rather, the insurer is contractually required only to consider the *financial* risk to the insured from an adverse judgment; it is this risk, and not the glare of publicity, from which the insurance contract provides protection.

¶ 29 Similarly, in this case, in the absence of the reservation of rights, Gulf would not have been required to consider the possible effects on the brokers' licenses in evaluating a settlement offer. Because Tenney and SJB were taking over the duties of the insurer in entering into the settlement agreement, the superior court should not have considered the licensure issues in determining whether that agreement was reasonable and prudent.

### C.

¶ 30 PCI argues that because consequential damages are awarded in bad faith failure to settle cases,[4] the collateral consequences of an adverse judgment should also be considered in evaluating *Morris* agreements for reasonableness. But this argument confuses two very different proceedings. A bad faith failure to settle a case gives rise to an action *in tort*, and the successful plaintiff may therefore recover tort damages. *See Rawlings v. Apodaca*, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986). The case before us, however, does not involve a claim that Gulf acted in bad faith; rather, PCI sought in the garnishment proceeding solely to enforce the insureds' *contractual* right to indemnity under the insurance policy.[5] As we have noted above, the insurer

---

4. *See Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 164 Ariz. 286, 289, 792 P.2d 749, 752 (1990) (holding that successful bad faith plaintiff may recover full amount of judgment imposed in underlying action); *Filasky v. Preferred Risk Mut. Ins. Co.*, 152 Ariz. 591, 597–98, 734 P.2d 76, 82–83 (1987) (holding that pain, humiliation, inconvenience, pecuniary losses, and punitive damages may be recovered in a bad faith action); *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 6, 699 P.2d 376, 381 (App.1984) (holding that attorney's fees and consequential damages may be recovered); *see also* 22 *Appleman on Insurance 2d: Law of Liability Insurance* § 137.5(C) (stating that insured's damages for insurer's breach of duty to settle include "excess over policy limit, consequential damages, economic loss, physical impairment, emotional distress, punitive damages, and attorney fees").

5. The insurer's reservation of rights does not excuse it from its contractual duty to consider settlement offers in good faith. *Cf.* 22 *Appleman on Insurance 2d* § 137.3(H)(1) (stating that a declaratory action by an insurer does not relieve it from its duty to protect insured's interests in considering settlement). Thus, an insurer who has reserved rights and is later found to have

has no contractual obligation under the policy here to consider potential non-financial consequences on the insured from an adverse judgment.

## V.

¶ 31 For the above reasons, we vacate the opinion of the court of appeals and remand this case to superior court for further proceedings consistent with this opinion. On remand, the superior court should evaluate the reasonableness of the stipulated judgment without regard to any effect that the underlying litigation might have had on the brokers' licenses held by Tenney and SJB. PCI has the burden of showing that the settlement was fair and reasonable under the circumstances. If PCI cannot show that the entire amount of the stipulated judgment was reasonable, it may recover only the portion (if any) that it proves is reasonable. *See Morris*, 154 Ariz. at 121, 741 P.2d at 254.

¶ 32 PCI and Gulf have each requested attorneys' fees pursuant to A.R.S. § 12–341.01 (2003). Because we do not yet know which party will prevail in these garnishment proceedings, we decline to award fees to either party.

CONCURRING: CHARLES E. JONES, Chief Justice, RUTH V. McGREGOR, Vice Chief Justice, REBECCA WHITE BERCH and MICHAEL D. RYAN, Justices.

acted in bad faith can be held liable for any judgment in excess of the policy limits, as well as for consequential damages. This case, however, does not present such a circumstance.