**GREAT AMERICAN ASSURANCE COMPANY, et al., Plaintiffs,**

v.

**PCR VENTURE OF PHOENIX LLC, et al., Defendants.**

**No. CV–13–00570–PHX–ROS**

United States District Court, D. Arizona.

Signed 12/28/2015

Kathleen L. Beiermeister, Spencer Thomas Proffitt, Thomas Harold Crouch, Meagher & Geer PLLP, Scottsdale, AZ, for Plaintiffs.

Christopher Alan Lavoy, Hamid Jabbar, Tiffany & Bosco PA, Alison Rebecca Christian, Douglas L. Christian, Stephen M. Dichter, Christian Dichter & Sluga PC, Phoenix, AZ, Eric C. Bosset, Covington & Burling LLP, Washington, DC, for Defendants.

## ORDER

Honorable Roslyn O. Silver, Senior United States District Judge

Great American Assurance Company ("Great American") entered into an insurance contract with PCR Venture of Phoenix LLC ("PCR Venture"). When an individual sued PCR Venture, Great American decided to defend PCR Venture. Great American now regrets that decision and seeks to recover the attorneys' fees it incurred when defending PCR Venture. The Arizona Supreme Court has not addressed whether Arizona law allows an insurer to recover attorneys' fees in this situation. Courts outside of Arizona have split on this issue but the better reasoned opinions hold insurers cannot recover fees of this type. Based on those opinions, Great American's request for attorneys' fees will be denied.

## BACKGROUND

The complete background of this litigation is very complicated and not relevant to the issue of attorneys' fees. The important events, somewhat simplified, are as follows. PCR Venture is in the car rental business while Great American is in the insurance business. In 2009, PCR Venture purchased a "business automobile insurance policy" and a "commercial general liability insurance policy" from Great American. (Doc. 41 at 2, Doc. 39 at 2). The policies contained very similar lan-

guage obligating Great American to pay the amounts PCR Venture became legally obligated to pay to third parties "because of 'bodily injury.'" (Doc. 41 at 3).

In 2010, Michael Bovre rented a car from PCR Venture. In doing so, Mr. Bovre did not pay for a supplemental insurance policy offered by PCR Venture but actually provided by another insurance company. The form filled out by Mr. Bovre hinted that he wished to purchase such coverage. While driving the rental car, Mr. Bovre collided with a motorcycle and seriously injured the individuals riding the motorcycle. Believing he had purchased coverage under the supplemental liability policy, Mr. Bovre concluded the supplemental liability policy should be available to settle the claims against him. The supplemental liability insurer disagreed and refused to provide coverage. At some point, Great American learned of the dispute between Mr. Bovre and the supplemental liability insurer. At that time, there were indications Mr. Bovre might assert claims against PCR Venture.

Based on the possibility that Mr. Bovre would sue PCR Venture, Great American sent PCR Venture a reservation-of-rights letter. In that letter Great American stated "it appears that the potential claim by Mr. Bovre [against PCR Venture] might not be covered under the policies issued by Great American." (Doc. 39–3 at 2). The letter stated a definitive decision could not be reached because it was "not entirely clear what claim Mr. Bovre might assert against [PCR Venture]." (Doc. 39–3 at 9). But the letter made clear the Great American policies only provided coverage for damages "because of" bodily injury and Great American believed any claims Mr. Bovre might assert would not be "because of" bodily injury. Therefore, Great American believed Mr. Bovre's claims would not be covered.

For present purposes, it is not necessary to detail a complicated sequence of settlements and assignments between various parties that happened after that letter. In simple terms, Mr. Bovre eventually sued PCR Venture. According to the complaint in that suit, PCR Venture's failure to provide Mr. Bovre with the supplemental liability insurance coverage constituted negligence, negligent misrepresentation, breach of contract, and bad faith. (CV–12–1671, Doc. 1–2 at 36; Doc. 376 at 4). A copy of that complaint was sent to Great American, which prompted a supplemental reservation-of-rights letter to PCR Venture. (Doc. 39–3 at 25). Great American's supplemental letter reiterated its belief that the claims by Mr. Bovre were not "because of" bodily injury. Instead, all of Mr. Bovre's claims were based on economic harm. Despite the belief that Mr. Bovre's claims were not covered, Great American agreed to defend PCR Venture. In doing so, Great American stated it was "reserving all rights," including "the right to seek reimbursement of defense costs." (Doc. 39–3 at 31). Developments in the underlying suit led to a third reservation-of-rights letter. (Doc. 39–3 at 54). As did the previous two, the third letter recounted Great American's belief that coverage did not exist. The third letter reiterated that Great American was reserving "the right to seek reimbursement of defense costs." (Doc. 39–3 at 62).

While the suit by Mr. Bovre against PCR Venture was still pending, Great American commenced the present declaratory judgment against PCR Venture. Great American sought declaratory judgment that Mr. Bovre's allegations against PCR Venture did not trigger either Great American policy. (Doc. 1 at 13–16). The complaint also sought reimbursement "for defense costs incurred in defending [PCR Venture] in connection with" Mr. Bovre's suit. (Doc. 1 at 13–14). Finally, the com-

plaint sought an award of attorneys' fees in connection with having to file the declaratory judgment action. (Doc. 1 at 14).

This declaratory judgment action proceeded with the parties eventually filing cross-motions for summary judgment. In July 2014–while Great American was still defending PCR Venture against Mr. Bovre's claims–this Court ruled coverage under the Great American policies did not exist. (Doc. 59). That conclusion was based on two grounds. First, Mr. Bovre's claims were not "because of" bodily injury. And second, the policies only covered "accident[s]" but Mr. Bovre's claims were not based on an "accident" as that term was defined by Arizona law. (Doc. 59). After concluding coverage did not exist, the Court held Great American's request for attorneys' fees would be resolved once the litigation involving Mr. Bovre concluded. Apparently Great American stopped defending PCR Venture once the declaratory judgment was issued.

In April 2015, the court hearing the suit between Mr. Bovre and PCR Venture issued a ruling, holding PCR Venture liable.[1] That finding meant Great American could not ask for its fees in the other case because its insured, PCR Venture, was not the prevailing party. Great American now seeks an award of fees in the present case.

## ANALYSIS

Great American seeks an award of two types of fees: 1) approximately $330,000 to cover the fees expended in defending PCR Venture in the other action before judgment in this declaratory judgment action was issued; and 2) approximately $67,000 to cover the fees expended in prevailing in this declaratory judgment action. The two categories will be addressed separately.

## I. Fees for Defending PCR Venture

■ Arizona law gives three options to an insurer. that receives notice from an insured about a possible claim. The insurer can 1) unconditionally accept coverage and defend the claim; 2) reject the claim and refuse to defend; or 3) defend the claim under a reservation of rights. Each of these choices comes with its own set of consequences.

■ Under the first option—unconditionally defending its insured—an insurer bears the full cost of the defense but reaps the benefit of requiring the insured's cooperation in the defense. That cooperation means the insured cannot enter into a settlement with the opposing party without the insurer's consent. *See United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246, 252 (1987) ("[T]he cooperation clause prohibition ... forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy.").

■ Under the second option—rejecting the claim and refusing to defend—an insurer reaps the benefit of not incurring any defense costs in defending its insured but suffers the detriment that the insured may enter into an agreement to protect itself from personal liability. *See Parking Concepts, Inc. v. Tenney*, 207 Ariz. 19, 83 P.3d 19, 20 n. 1 (2004). If coverage does exist, an insurer selecting this option is especially susceptible to a. bad faith claim. *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536, 334 P.3d 719, 730 (2014) (noting "when an insurer refuses to defend ... it does so at its peril").

■ Finally, an insurer has a third option of defending under a reservation of rights. Under this option, an insurer will

---

1. Again, due to a series of assignments, the suit at the time of judgment did not involve Mr. Bovre and the suit included claims be-

yond those originally belonging to Mr. Bovre. There is no need to detail those additional complications here.

control the defense and, generally, pay for that defense. While defending its insured, an insurer may seek a declaration that coverage does not actually exist such that it need not continue the defense of its insured. As for the insured, it is free to enter into an agreement "to protect [himself] from the sharp thrust of personal liability." *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 106 P.3d 1020, 1024 (2005). *See also Parking Concepts*, 83 P.3d at 20 n. 1 (outlining standard terms of *Morris* agreements).

The present case falls under the third option. Great American chose to defend PCR Venture under a reservation of rights and also sought declaratory judgment that coverage did not exist. What makes this case unique is that, having prevailed in establishing coverage did not exist, Great American now seeks to recover the fees it expended in defending PCR Venture until the fact that coverage did not exist was definitively resolved. Great American argues it is entitled to recover these fees because PCR Venture would be unjustly enriched otherwise and "public policy supports the award" of fees. (Doc. 67 at 2).

■ As noted earlier, the Arizona Supreme Court has not addressed whether an insurer in Great American's position can recover the fees expended in defending an insured. Without such guidance, the Court must "predict how the [Arizona Supreme Court] would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (quotation omitted). Because this issue has been examined in great detail by other states, those decisions are the preferred starting point.

The modern discussion of an insurer seeking to recover fees spent on defending its insured begins with the California Supreme Court case *Buss v. Superior Court*, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997). There, an insured tendered the defense of an action to his insurance company. The action involved twenty-seven causes of action and, after reviewing the complaint, the insurer determined that only one of the twenty-seven causes of action "was at least potentially covered." *Id.* at 370, 939 P.2d 766. Under California law, the presence of at least one potentially covered claim meant the insurer had to defend the entire action. *Id.* at 375, 939 P.2d 766. Later, the insurer sought to recover the fees it expended in defending the twenty-six causes of action that were not even potentially covered. The California Supreme Court concluded recovery was permissible.

■ According to the *Buss* court, "an insurer may not seek reimbursement for defense costs" incurred in defending "claims that are at least potentially covered" by the insurance policy. *Id.* at 375, 939 P.2d 766. But an "insurer may indeed seek reimbursement for defense costs" incurred in defending "claims that are not even potentially covered." *Id.* at 376, 939 P.2d 766. The court explained this conclusion under contract law. For potentially covered claims, "the insurer has been paid premiums by the insured." *Id.* at 375, 939 P.2d 766. And because the insurer "bargained to bear these costs," any "attempt to shift them would upset the [contractual] arrangement." *Id.* But for claims not even potentially covered, "the insurer has not been paid premiums by the insured," the insurer "did not bargain to bear these costs," and any "attempt to shift them would not upset the [contractual] arrangement." *Id.* at 376, 939 P.2d 766. Accordingly, insurers had a right to reimbursement "implied in law as quasi-contractual." *Id.* at 376, 939 P.2d 766. The *Buss* court also referred to this right to reimburse-

ment as justifiable under the theory of "unjust enrichment." *Id.* The *Buss* court noted "in order to obtain reimbursement for defense costs, the insurer must reserve its right thereto." *Id.* at 384, 939 P.2d 766 n. 27.

The *Buss* decision is strange in that it divided claims into those "not even potentially covered" and those "at least potentially covered." In *Buss* itself, it was obvious which claims fell into which category. But in most cases, it is unclear whether claims are or are not potentially covered. However, the California Supreme Court later clarified that the *Buss* inquiry could be conducted after the fact. Thus, an insurer can elect to defend under a reservation of rights and then, when it turns out coverage does not exist, the insurer can recoup all the defense costs incurred in that defense. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 31 Cal. Rptr.3d 147, 115 P.3d 460 (2005). This rule, explicitly described as "law applied in hindsight," uses the results of the coverage dispute to dictate the contours of the duty to defend. *Id.*, 31 Cal.Rptr.3d 147, 115 P.3d at 468. Using "law applied in hindsight, courts can determine that no potential for coverage, and thus no duty to defend, ever existed." *Id.* And with no duty to defend ever having existed, the insurer is free to recover fees expended in defending non-covered claims.

After *Buss* and *Scottsdale,* courts across the country concluded insurers could obtain reimbursement of defense costs from their insureds when it turned out coverage under the policies did not exist. *See* Angela R. Elbert, Stanley C. Nardoni, *Buss Stop: A Policy Language Based Analysis,* 13 Conn. Ins. L.J. 61, 70 (2007). Those courts often pointed to the reservation of rights letters and explained those letters constituted "offer[s] to create [ ] new contract[s] that the policyholders[s] could accept, if by no other means, than by accept-

ing the insurer[s'] payment of defense costs." *Id.* While "a good number of courts" adopted the reasoning in *Buss,* in recent years a number of courts have analyzed and rejected the *Buss* approach. *Id.* Those courts have concluded the *Buss* approach suffers from fundamental flaws regarding the duty to defend as well as basic contract law. A strong example of this comes from the Supreme Court of Pennsylvania in *American and Foreign Insurance Co. v. Jerry's Sport Center, Inc.,* 606 Pa. 584, 2 A.3d 526 (2010).

In *Jerry's Sport Center,* the plaintiffs had sued a group of firearms dealers seeking "to hold the firearms industry liable for injury, death, and other damages ... through the negligent creation of a public nuisance" due to the manner in which firearms were distributed. *Id.* at 529. The firearm dealers tendered the defense of that suit to their insurer and the insurer stated it would provide "a defense under a full reservation of rights." *Id.* at 530. The insurer undertook the defense but it later filed a declaratory judgment action, arguing it had no duty to defend or indemnify the dealers. The insurer succeeded in the declaratory judgment action which led the insurer to seek "reimbursement of defense fees" from the dealers. *Id.* at 531. The lower court awarded fees "based on the equitable doctrine of unjust enrichment." *Id.* The intermediate court of appeals reversed and the Pennsylvania Supreme Court accepted review.

After "[c]arefully considering the competing views espoused" by courts across the country, the Pennsylvania Supreme Court concluded "the broad duty to defend under Pennsylvania law" prohibited insurers from recovering their defense costs. *Id.* at 540. That broad duty meant insurers must examine the underlying allegations and decide whether to defend. While that decision "may be difficult, it is the

insurer's duty to make that decision." *Id.* at 542. After all, "[i]nsurers are in the business of making this decision." *Id.* Thus, when an insurer concludes there is "no possibility of coverage, . . . it should deny its insured a defense." *Id.* "If, on the other hand, the insurer is uncertain about coverage, then it should provide a defense and seek declaratory judgment about coverage." *Id.* An insurer choosing this latter course, however, is not entitled to recover the defense costs incurred while it seeks declaratory judgment because a later decision in a declaratory judgment action cannot "retroactively eliminate the insurer's duty to defend the insured during the period of uncertainty." *Id.* Any other conclusion would "narrow Pennsylvania's long-standing view that the duty to defend is broader than the duty to indemnify." *Id.* at 544.

Beyond a desire to keep the duties to defend and indemnify sufficiently separate, the *Jerry's Sports Center* court also noted the parties' contract did not contain any provision allowing for the recovery of defense costs. Without language authorizing such recovery, basic "rules of contract interpretation" prevented the insurer from recovering its defense costs.[2] *Id.* at 544. The court also specifically rejected the idea that a reservation of rights letter could create new contractual provisions binding on the parties. The court reasoned an insurer "cannot employ a reservation of rights letter to reserve a right it does not have pursuant to the contract." *Id.*

Finally, the *Jerry's Sports Center* court rejected application of "any equitable bases upon which to grant a right to reimbursement." *Id.* at 545. Despite the deal-

ers receiving a defense when the insurance policy did not provide coverage, the truth was that both parties to the insurance contract had received exactly what they bargained for. That is, the insurer had been able to control the underlying defense and "avoid the risks that an inept or lackadaisical defense" presented "if it ultimately turn[ed] out there was a duty to indemnify." *Id.* (quotation marks and citation omitted). The insurer had also been able to protect itself from a bad faith claim. *Id.* And the dealers had received a defense where, at the time, it was genuinely unclear if coverage existed. In short, defending the underlying suit was "as much in [the insurer's] own interest" as in the dealer's. *Id.* at 546.

While the reasoning in *Jerry's Sports Center* appears compelling, good arguments exist on both sides of this issue. Neither the parties nor the Court have located Arizona authority adopting the *Buss* or *Jerry's Sports Center* approach. The only Arizona authority directly implicating one approach is *Nucor Corp. v. Employers Ins. Co. of Wausau*, 231 Ariz. 411, 296 P.3d 74 (2012). That case, however, does not provide definitive guidance as it merely claims insurers who provide "more coverage than bargained for" should pursue "contractual remedies." *Id.* at 86. Looking at that case in some depth shows it is unclear what "contractual remedies" the court of appeals had in mind.

*Nucor* involved a complicated insurance dispute regarding an insured's involvement in the contamination of groundwater. The insured had multiple insurance policies potentially triggered by the contamination and one of the many issues on appeal was

**2.** As explained by one commentator, basic contract law specifies that "[w]ithout specific policy language allowing for reimbursement, the insurer may recover nothing from the insured, regardless of the terms of its reserva-

tion of rights letter and regardless that a subsequent court ruling determines that the policy provides no coverage for the claims defended." 6 No. 2 *Journal of the American College of Construction Lawyers* 1.

the appropriate allocation of defense costs amongst all the insurers. The trial court had required the insured pay a portion of the defense costs that would have been paid by an insurer except the insurer was insolvent. In effect, the trial court believed the insured could be liable under an equitable contribution theory because it would be unfair to require other insurers bear the burden of one insurer being insolvent. In reversing, the court of appeals observed "insurers have a right of equitable contribution among each other [but] that right does not usually extend to the insured." *Id.* at 86. Accordingly, an insurer seeking to recover from its insured would have to rely on the underlying contract, not equitable contribution. After reaching this conclusion, the court noted without analysis or explanation, that if one insurer provided its insured with "more coverage than bargained for under [the] insurance contract ... contractual remedies, not equitable contribution, were appropriate." *Id.* In support of this statement, the court cited *Buss.*

It is unclear what the *Nucor* court meant by citing *Buss* in support of the proposition that an insurer that provides "more coverage than bargained for" should resort to "contractual remedies." The cited portion of *Buss* states that for certain claims, the absence of a clear contractual provision means no reimbursement is possible. *Buss,* 65 Cal.Rptr.2d at 376, 939 P.2d 766 ("the insurer may not seek reimbursement" for claims at least potentially covered). But the cited portion also refers to "quasi-contractual" remedies being available to obtain reimbursement for other types of claims. Thus, by citing *Buss* the *Nucor* court may have meant to convey reimbursement turns on whether the contract explicitly allows for it. Alternatively, the *Nucor* court may have meant to convey that quasi-contractual remedies–even absent contractual language–could provide a basis for recovery. In the end,

no definitive rule can be derived from *Nucor*'s stray statement. Thus, this Court will look to general principles of Arizona insurance law to determine if the Arizona Supreme Court would follow *Buss* or *Jerry's Sports Centers.*

■■ Arizona law has long recognized "[t]he duty to defend ... is not the same as the duty to indemnify." *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 722 P.2d 975, 982 (1986). "The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable." *Id.* This means the "duty to defend is separate from, *and broader than,* the duty to indemnify." *Quihuis v. State Farm Mut. Auto. Ins. Co.,* 235 Ariz. 536, 334 P.3d 719, 727 (2014) (emphasis added). While closely related in most cases, the duty to defend and the duty to indemnify actually are independent such that, in some circumstances, an insurer can be held liable for breaching a duty to defend even where a duty to indemnify does not exist. *See, e.g., Lloyd v. State Farm Mut. Auto. Ins. Co.,* 176 Ariz. 247, 860 P.2d 1300, 1304 (1992) (where no duty to indemnify existed, jury could still find insurer "assumed the duty of defense" and then conducted defense in inappropriate manner).

■ Given the long-standing recognition that the two duties are distinct, there is no indication the Arizona Supreme Court would narrow the duty to defend such that it only exists when the duty to indemnify is also triggered. This narrowing of the duty to defend is the effect of Great American's claim for recovery of its defense costs. As noted in *Jerry's Sports Center,* allowing for the recovery of defense costs when coverage is later found not to exist would effectively make the duty to defend and duty to indemnify coterminous. 2 A.3d at 544 (allowing recov-

ery of costs "would amount to a retroactive erosion of the broad duty to defend ... by making the right and duty to defend contingent upon a court's determination that a complaint alleged covered claims"). The duty to defend would *only* exist where coverage under the insurance policy also existed. Courts following the *Buss* approach have not offered a coherent path of keeping the duty to defend broader than the duty to indemnify while still allowing insurers to recover defense costs. Absent some indication the Arizona Supreme Court plans to dilute the duty to defend in this manner, the *Buss* approach does not appear viable.

■ Further support for adopting the *Jerry's Sports Center* approach comes from Arizona law regarding contract interpretation. Arizona courts will not "add something to [a] contract which the parties have not put there." *Employers Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262,183 P.3d 513, 518 (2008) (citation omitted). It is undisputed that the contract between Great American and PCR Venture does not contemplate the award of attorneys' fees in this type of situation.[3] In fact, even if the insurance contract were merely ambiguous on this issue, Arizona law would require that contract be construed in the insured's favor. *See Employers Mut. Cas. Co.*, 183 P.3d at 515 (noting ambiguous insurance contract must be construed in favor of insured). Put simply, there does not appear to be any basis in the policies' language for allowing reimbursement and it appears unlikely the Arizona Supreme Court would add fee-shifting language on its own.

■ The *Buss* court recognized the absence of fee-shifting language in the policy

itself but concluded an insurer could rely on the language in reservation of rights letters to seek reimbursement. This approach is dubious under Arizona law. In Arizona, "[a] party cannot unilaterally alter the terms of a contract without the assent of the other party." *Coronado Co. v. Jacome's Dep't Store, Inc.*, 129 Ariz. 137, 629 P.2d 553, 556 (1981) (citing *Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541, 542 (1965)). Given that the original contract did not allow for Great American to recover its fees, Great American could not create that right through later unilateral action in the form of reservation of rights letters. Accordingly, it is unlikely the Arizona Supreme Court would allow for Great American to recover its fees under a contract-like theory.

Finally, the *Buss* court attempted to justify its holding under the doctrine of "unjust enrichment." But Arizona "courts have repeatedly held that the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 732 P.2d 579, 584 (1986) (citing *Brooks v. Valley Nat. Bank*, 113 Ariz. 169, 548 P.2d 1166, 1171 (1976)). Great American offers no convincing explanation how unjust enrichment could properly be invoked in the present circumstances.

Based on past rulings, the Arizona Supreme Court is likely to keep the duty to defend and duty to indemnify separate. The Arizona Supreme Court is also likely to hold 1) courts should not insert provisions into contracts that the parties did not; 2) one party cannot unilaterally alter the terms of a contract by issuing a reser-

---

**3.** If anything, the parties' contract indicates recovery is forbidden. (Doc. 39–2 at 19) (policy language stating Great American "will pay, with respect to ... any 'suit' against an insured we defend ... [a]ll expenses we in-

cur"). *See also* Angela R. Elbert, Stanley C. Nardoni, *Buss Stop: A Policy Language Based Analysis*, 13 Conn. Ins. L.J. 61, 95 (2007) (noting this exact language "runs expressly against a right of reimbursement").

vation of rights letter with new terms; and 3) unjust enrichment is not an available remedy when a contract exists. Based on these conclusions, the Court predicts the Arizona Supreme Court would follow the approach of *Jerry's Sports Center*. Therefore, Great American is not entitled to recover the fees expended in defending PCR Venture.

## II. Fees as Prevailing Party in Contract Action

The parties agree the fees Great American expended in bringing and prevailing in this declaratory judgment action should be analyzed under the Arizona law allowing for an award of attorneys' fees to the successful party in a contract action. A.R.S. § 12341.01. While Arizona law allows for an award of such fees, "there is no presumption" in favor of awarding fees. *Motzer v. Escalante*, 228 Ariz. 295, 265 P.3d 1094, 1095 (2011). Instead, the Court must examine six factors to determine whether an award is appropriate. *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 974 n. 3 (9th Cir.2011). Each factor is addressed below.

### A. PCR Venture's Defense Had Some Merit

The first factor requires assessing whether PCR Venture's position was meritorious. *Id.* In context, this requires assessing if PCR Venture's claim that coverage existed was meritorious. Great American puts itself in an unusual position by arguing PCR Venture's claim to coverage was patently insubstantial. Great American, at some point in time, concluded there was sufficient doubt about coverage such that it agreed to defend PCR Venture in the underlying litigation. While PCR Venture's claim for coverage failed at summary judgment in this case, Great American's own actions show there was *some* non-frivolous merit to PCR Venture's position. Therefore, this factor weighs against awarding fees.

### B. Litigation Might Have Been Avoided

The second factor requires determining if this litigation could have been avoided or settled. *Id.* There is no indication PCR Venture was willing to abandon its belief that coverage existed. However, this case was initiated by Great American, not PCR Venture. And while it is possible PCR Venture would have sued if Great American had not defended the underlying litigation, that is not certain. The uncertainty about the necessity of this litigation means this factor does not support awarding fees.

### C. Assessing Fees Would Not Cause Extreme Hardship

The third factor requires determining if awarding fees against PCR Venture would cause an extreme hardship. *Id.* It would not. This factor supports awarding fees.

### D. Great American Prevailed In Full

The fourth factor requires assessing the extent of Great American's success. *Id.* Great American prevailed on all the relief it sought. This factor supports awarding fees.

### E. Legal Question was Novel in Part

The fifth factor involves assessing the novelty of the legal questions presented. *Id.* The summary judgment order had to address the meaning of "because of bodily injury" under Arizona law. With no controlling Arizona authority directly on point, the case involved at least one novel issue. But the summary judgment order was also based on long-standing Arizona law regarding the meaning of the term "accident." Accordingly, some aspects of this case presented novel issues while others did not. Overall, this factor is neutral.

### F. Award Might Discourage Tenable Claims

The sixth and final factor involves determining if awarding fees here would discourage insureds from litigating or defending future declaratory judgment actions of this type. There is some concern that awarding fees to Great American would dissuade insureds from litigating future actions. After all, an insured is often already facing an underlying claim such that punishing an insured for contesting a declaratory judgment action might be harsh. This factor, therefore, weighs against awarding fees.

### G. Fees Not Appropriate

On balance, the relevant six factors do not support an award of fees to Great American for prevailing in this case. Great American prevailed on all the relief it sought and awarding fees would not cause an extreme hardship. But awarding fees to an insurer, who is suing its insured in this type of situation, might dissuade others from defending such suits. In addition, it was Great American's choice to defend the underlying litigation and initiate this suit. Great American is "in the business of making" this type of choice. *Jerry's Sport Center*, 2 A.3d 526, 542. And Great American has not offered any convincing basis for this Court to ignore Great American's knowing decision to undertake coverage. Therefore, while an award of fees would be permitted, an award is not appropriate.

Accordingly,

**IT IS ORDERED** the Motion for Attorney Fees (Doc. 67) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Leave to File Response (Doc. 80) is **DENIED**.